**Darlene SMITH, Plaintiff,**

**v.**

**WYNFIELD DEVELOPMENT CO., INC., et al., Defendants.**

**Civil Action File No. 1:04–CV–1875–TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 24, 2006.

Dean Richard Fuchs, Schulten Ward & Turner, Atlanta, GA, for Plaintiff.

Jaime N. Cole, Joseph William Bryan, Ogletree Deakins Nash Smoak & Stewart, Atlanta, GA, for Defendants.

## *ORDER*

THRASH, District Judge.

This is an employment discrimination and FLSA action. It is before the Court on the Report and Recommendation [Doc. 118] of the Magistrate Judge recommending granting in part and denying in party the Plaintiff's Motion for Summary Judgment [Doc. 77] and granting in part and denying in part the Defendants' Motion for Summary Judgment [Doc. 85]. After careful consideration of the Objections of the parties, the Court approves and adopts the Report and Recommendation as the judgment of the Court. The Magistrate Judge correctly concluded that the Plaintiff had not established a genuine issue of fact for trial as to her disability claim but that she had done so with respect to her age discrimination claim. The latter claim as well as the amount of damages, if any, on her FLSA claim will go forward for trial. The Defendants have 10 days from the docketing of this Order to file a Motion

for *Summary Judgment* based upon res judicata.

SO ORDERED, this 23 day of August, 2006.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SCOFIELD, United States Magistrate Judge.

## I.

### Introduction

Plaintiff Darlene Smith ("Plaintiff") filed the instant employment discrimination action against Defendants, Wynfield Development Company, Inc. ("Wynfield") and Homelife Communities Group, Inc. ("Homelife"), on June 28, 2004. [Doc. 1]. Plaintiff's complaint asserts discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"); the Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. § 621 et seq. ("ADEA"); retaliation under the ADA and ADEA; and violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. [Docs. 1 and 31—complaint and amended complaint]. This matter is presently before the Court on Plaintiff's motion for summary judgment as to her FLSA claim [Doc. 77] and Defendants' motion for summary judgment as to all claims. [Doc. 85]. For the reasons expressed herein, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [Doc. 77] be **GRANTED** and Defendants' motion for summary judgment [Doc. 85] be **GRANTED in part and DENIED in part.**

## II.

### Factual Background

When evaluating the merits of a motion for summary judgment, the Court must view the evidence and factual inferences in a light most favorable to the non-moving party. *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1309 (11th Cir.2001); *Hairston v. Gainesville Sun Publ'g. Co.*, 9 F.3d 913, 920 (11th Cir.1993). Applying this legal standard, the Court derives the following facts from the parties' statements of facts and from the record as a whole:[1]

Homelife is a residential real estate developer and Wynfield is the payroll company for individuals employed by Homelife. On December 16, 2002, Plaintiff, age fifty-three, was hired by Defendant to work as a Warranty Clerk in Homelife's Warranty Department. Plaintiff was hired by Hope Palmer—Manager of the Warranty Department—age fifty, to send out a welcome letters, warranty forms, and follow-up letters to Homelife's clients. (Deposition of Darlene Smith ("Pl.Dep.") at 38). Plaintiff utilized pre-made forms to execute these tasks. (Pl. Dep. at 38–39). At times, when Palmer, who was Plaintiff's immediate supervisor, was behind in her work, Plaintiff helped her with customer complaints by contacting contractors regarding various problems. (Pl. Dep. at 41). According to Plaintiff, she was hired at an hourly rate of $12.00 per hour. (Pl. Dep. at 44). According to Defendant, Plaintiff was a salaried employee who earned $480.00 per week, regardless of the number of hours she worked. (Def. SMF at 19).

On January 3, 2003, shortly after Plaintiff began employment with Defendants, she received a memorandum from the owner of Homelife, Jon Been, requesting a

---

[1] Unless otherwise noted this factual background is derived from Defendant's statement of material facts which have not been disputed by Plaintiff.

copy of her driver's license. (Pl. Dep. at 72). Plaintiff testified that this request was generated because Defendant needed a photo ID for her I–9 form. (Pl. Dep. at 72–73). Accordingly, on January 6, 2003, Plaintiff provided a copy of her Georgia ID card to Defendant. *Id.*

On June 20, 2003, Plaintiff tripped and fell at work, injuring her right ankle and left thumb. (Pl. Dep. at 129); (Deposition of Lori Chapman ("Chapman Dep.") at Ex.58—medical record). Plaintiff also claims that, during her employment, she suffered from a pinched nerve in her neck and a bulging disc in her neck/back, which resulted from an injury she sustained during a car accident in the 1980s. (Pl. Dep. at 155–162). Nevertheless, Plaintiff drove herself to and from work throughout her employment with Defendants, although she contends that doing so was unsafe due to her injuries and that she protested to Defendants to this effect. (Pl. Dep. at 79–81).

In June 2003, Lori Chapman, Defendant's Human Resource Director, requested that all employees, including Plaintiff, complete an employment application. (Chapman Dep. at 6, 23). Plaintiff was not required to fill one out when she was hired because Defendant did not have formal application documents at that time. (Chapman Dep. at 23). Plaintiff testified that did not immediately return the application because she did not have information or records pertaining to her past employment. (Pl. Dep. at 61–62). On July 17, 2003, Plaintiff returned a partially completed application to Chapman, including a note that stated she would follow-up with her past work history. (Pl. Dep. at 61); (Chapman Dep. at 32). The next day, Been told Plaintiff she would be terminated if she did not complete the application and Plaintiff testified that she then completed the application without her records

as to her past employment history. (Pl. Dep. at 61).

Chapman also determined at this time that a copy of Plaintiff's driver's license was not in the personnel files. (Chapman Dep. at 50). According to Defendant, a valid driver's license was required of all employees for Defendant's general liability insurance policy. (Chapman Dep. at 50, 130, 185–86). Plaintiff disputes that Defendant required her driver's license because her job did not require her to drive, and, even if it did, Defendant's insurance policy only covered company-owned vehicles and Plaintiff did not drive a company-owned vehicle. (Pl. Resp. To SMF at 27). Chapman, who administered the insurance policy, explained that the general liability insurance policy covered employees driving in their personal vehicles for work purposes and that the insurance company required a driver's license. (Chapman Dep. at 25–26). While Plaintiff maintains that she provided her driver's license to Chapman in July 2003 for purposes of completing a second I–9 form (Pl. Resp. To SMF at 29), Plaintiff's cited deposition testimony and exhibits fail to establish this. See (Pl. Dep. at 82–92); (Chapman Dep. Exh. 62—Georgia ID card). Also, while Plaintiff supplied her driver's license number to Palmer on July 30, 2003, when she completed an application for a disabled parking permit, it does not appear that she presented Defendants with her driver's license, or a copy of it, as requested. (Palmer Dep. Ex. 18—application).

On August 8, 2003, Plaintiff's employment was terminated "primarily" because Plaintiff failed to present Defendant with a valid driver's license. See (Def. SMF at 31);(Chapman Dep. at 24–25); (Deposition of Jon Been ("Been Dep.") at Ex. 28—separation letter). The separation letter, signed by Jon Been, stated as follows:

It has also been ascertained that you have not provided Homelife Communities with truthful information on the employment application all employees complete and that a significant amount of inaccuracies exist regarding your medical situation. Both workers' compensation doctors you have selected have contradicted the information you have provided to our office with regard to appointment attendance, scheduled appointments, necessary on-site treatments and modified work arrangements. These facts combined with your previous warning regarding your behavior and performance constitutes grounds for employment termination.

(Been Dep. at Ex.28). Plaintiff filed the instant lawsuit on June 24, 2004. [Doc. 1].

### III.

### Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(C); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.1998). A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir.1991)(en banc)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The substantive law applicable to the case determines which facts are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the court "the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and "an ab-sence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Four Parcels*, 941 F.2d at 1437–1438. If the moving party fails to discharge this initial burden, then the motion must be denied. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993)(citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991)). If the burden is met, however, the non-moving party must then "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)).

### IV.

### Discussion

### A. Plaintiff's Motion for Summary Judgement as to her FLSA claim

Plaintiff seeks summary judgment as to her FLSA claim, asserting that no issue of material fact exists with respect to Defendants' liability for overtime, liquidated damages, and equitable relief (including reinstatement and attorneys' fees), for its failure to pay her overtime wages as required by the Act. [Doc. 77]. In response, Defendants assert that, because Plaintiff is an exempt administrative employee under the FLSA, there was no violation. [Doc. 88]. Defendants do not contest whether Plaintiff worked more than forty hours per week (Def. Resp. To SMF at 18–25); instead, Defendants only dispute Plaintiff's employment status under the Act. *Id.* Accordingly, the Court must decide whether, as a matter of law, Plaintiff was a non-exempt or exempt employee under the FLSA.

### 1. Is Plaintiff an exempt employee under the FLSA?

The FLSA requires employers to pay overtime compensation to employees who

work more than forty hours per week. 29 U.S.C. § 207(a). The Act provides that employers must compensate employees at a rate of one and one-half times their regular rate of pay for each hour worked in excess of forty hours per week. *Id.* Under Section 213 of the FLSA, however, employees who work "in a bona fide executive, administrative, or professional capacity" are exempt from the overtime payment requirement. 29 U.S.C. § 213(a)(1) (2004). "The employer bears the burden of proving the [ ] exemption. We construe overtime exemptions narrowly, against the employer." [2] *Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1340 (11th Cir.1994). Indeed, the employer must prove the applicability of an exemption by clear and affirmative evidence. *Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001).

The federal regulations have created two tests—the "long test" and the "short test"—for determining if an employee is exempt as a bona fide administrative employee.[3] The "long test" applies to those who earn less than $250 per week, while the "short test" applies to those who earn $250 or more per week. See 29 C.F.R. §§ 541.2 and 541.214. "The regulations offer the 'short test,' a safe harbor for employers, which an employee may satisfy even if she fails the long test." *Nicholson v. World Business Network, Inc.,* 105 F.3d 1361, 1364 (11th Cir.1997). Pursuant to 29 C.F.R. §§ 541.1(f) and 541.2(e)(2), employees who are paid more than $250 per week "need satisfy only the 'short test'" to be qualified as executive or administrative employees. *Thomas v. Jones Rest., Inc.,* 64 F.Supp.2d 1205, 1209 (M.D.Ala.1999). In the instant case, it is undisputed that Plaintiff earns more than $250 a week. (Pl. Resp. To SMF at 19). Therefore, the short test applies.

To be classified as an exempt bona fide administrative employee under Section 213, the short test requires: (1) that the employee be paid on a salary basis; (2) that the employee's primary duty consist of the performance of office or non-manual work directly related to management policies or general business operations of his employer; and (3) that the employee exercise discretion and independent judgment in executing their duties. 29 C.F.R. § 541.2(e)(2)(2004); see also *Sack v. Miami Helicopter Serv., Inc.,* 986 F.Supp. 1456, 1469 (S.D.Fla.1997).

■ With respect to the first prong, an employee is paid "on a salary basis" if she "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of [her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a) (2004). An employee is not considered paid on a salary basis if the predetermined amount is "subject to reduction because of variations in the quality or quantity of work performed." *Id.* To successfully challenge the salary basis test, plaintiffs

---

**2.** The FLSA is a remedial statute that should be liberally construed. *Prickett v. DeKalb County,* 349 F.3d 1294, 1296 (11th Cir.2003); *Johnston v. Spacefone Corp.,* 706 F.2d 1178, 1182 (11th Cir.1983)(quoting *Mitchell v. Lublin, McGaughy & Assocs.,* 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959)).

**3.** The Department of Labor revised the FLSA's implementing regulations governing certain exemptions, effective August 23, 2004.

29 C.F.R. § 541. In the instant case, Plaintiff's employment ended on August 8, 2003 and the complaint was filed on June 28, 2004. [Doc. 1]. Therefore, the Court must apply the prior regulations and interpretations. *See, e.g., Bagwell v. Florida Broadband, LLC,* 385 F.Supp.2d 1316, 1322 n. 5 (S.D.Fla.2005)(applying prior regulations to case where employment ended on April 15, 2004 and complaint was filed on May 17, 2004).

must demonstrate "either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).

In the instant case, Plaintiff testified that during her interview, Hope Palmer, the Manager of the Warranty Department, offered her the position at a rate of $10.00 per hour; that by the time she began employment Palmer had "gotten me two more dollars"; and that Palmer expressly told her the position was compensated at an hourly rate. This is consistent with Defendants' verified interrogatory response, which states that "Plaintiff was paid $12.00 per hour." [Doc. 77 at Ex.3— Def. Verified Resp. To Pl. First Interrogatories ¶ 11(a) ]. However, Plaintiff admits that she "was paid the same amount each week regardless of the number of hours she worked, $480.00." (Pl. Resp. To SMF at 19); see also [Doc. 77](Pl. Br. at 4)("[H]er gross $480 weekly wage was the same every week and did not vary according to the number of hours she actually worked."). Because Plaintiff has not demonstrated, and the record does not reflect, that Defendants had a practice of applying salary deductions to her, the Court finds that Defendants have satisfied their burden of proving that Plaintiff was paid on a salary basis for purposes of 29 C.F.R. § 541.118(a)(2004). Therefore, the first prong of the short test is satisfied. See *Atlanta Professional Firefighters Union, Local 134 v. Atlanta,* 920 F.2d 800, 805 (11th Cir.1991); *Quirk v. Baltimore Coun-*

*ty, Maryland,* 895 F.Supp. 773, 783 (D.Md. 1995).

■ Next, the "duties" portion of the short test—the second prong—requires a showing that the primary duty of the employee consists of "office or non-manual work directly related to management policies or general business operations of his employer...." 29 C.F.R. § 541.2(a)(1).[4] The phrase "directly related to management policies" is not limited to employees who actually formulate management policies, but includes employees whose responsibility it is to carry those policies out. 29 C.F.R. § 541.205(c).[5] In the instant case, Defendants submit that Plaintiff was exempt because she "performed office work related to the warranty offered to customers who purchased Homelife properties" and that these warranties were "a central part of Homelife's business." [Doc. 88] (Def. Resp. at 4). While Defendants admit that Plaintiff's job duties included "filing, copying, retrieving mail from the post office, and receiving and making telephone calls to homeowners, construction personnel, and contractors," they contend that her primary duty related to customer service. *Id.*

The record shows that Plaintiff worked in the Warranty Department as a Warranty Clerk/Associate and, despite Defendants' contention otherwise, her primary duty was to prepare form letters and documents regarding the warranty and to mail them to homeowners. (Pl. Dep. at 38–39). In fact, Lori Chapman, Director of Human Resources, and Jon Been, the owner of Homelife, both testified that Plaintiff's *pri-*

---

**4.** People performing work of substantial importance "include those ... who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree...." 29 C.F.R. § 541.205(c) (2004).

**5.** Whether a job duty qualifies as managerial or not is a legal question " 'governed by the pertinent regulations promulgated by the Wage and Hour Administrator.' " *Shockley v. City of Newport News,* 997 F.2d 18, 26 (4th Cir.1993);(quoting *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986)).

*mary* duties were clerical in nature. (Chapman Dep. at 253); (Been Dep. at 80). While Plaintiff's immediate supervisor, Hope Palmer, testified that Plaintiff's job duties included "customer service", Palmer's testimony did not establish that Plaintiff's *primary* duty was customer service. *Id.* As a result, the Court finds that Plaintiff's primary duty was to send out form letters and that this task was clerical, and not managerial, in nature.

Furthermore, even if Plaintiff was involved with customer service and with developing a new filing system, Defendants have not shown that these tasks, as Plaintiff performed them, would be considered managerial in nature. Insofar as "customer service" is concerned, the record shows that Plaintiff would call the appropriate contractor in response to homeowner complaints, but that "[t]here was no decision-making about it." (Pl. Dep. at 41); (Palmer Dep. at 176). Palmer explained that Plaintiff's customer service tasks merely involved talking to homeowners about complaints and contacting contractors to fix the problems. (Palmer Dep. at 24).[6] Similarly, Plaintiff's "development" of a filing system was not, in reality, managerial

in nature because Palmer instructed her to execute this task and ultimately declined to implement it. (Palmer Dep. at 111–112); (Pl. Dep. at 118–189). In short, Defendants have not shown that Plaintiff's tasks of fielding customer complaints to contractors or developing a filing system involved personnel supervision, decisions and evaluations, or business determinations sufficient to create an issue of fact as to whether her duties were managerial. *See* 29 C.F.R. § 541.102(b);[7] *Sack v. Miami Helicopter Serv.*, 986 F.Supp. 1456, 1465 (S.D.Fla.1997)(distinguishing generic paperwork activities from the supervisory activities of management). Accordingly, the Court finds that Plaintiff's primary duties—whether viewed as mailing form letters, fielding customer complaints, or developing a filing system-were clerical in nature and were not related to management policy or general business operations of the employers as required under the second prong of the short test. *See, e.g,* *Cusumano v. Maquipan Intern., Inc.*, (M.D.Fla.2005)(employee was non-exempt where him primary duties involved working with customers, demonstrating products, and repairing products).

**6.** Plaintiff's "customer service" duties were explained as follows:
> Q. So if there was a roofing complaint, she would complete the form and fax it to a roofing contractor? Was that basically the procedure?
> A. Yes, sir.
> Q. And if it was a plumbing complaint, she would fax it to an appropriate plumbing contractor?
> A. Yes, sir.

(Palmer Dep. at 176).

**7.** "The determination of whether an employee has management as his primary duty must be based on all the facts in a particular case." 29 C.F.R. § 541.103. Other duties that might be indicative of managerial responsibilities include:
> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property. `

29 C.F.R. § 541.102(b). The record does not show that Plaintiff engaged in any such activities in this case.

The third prong of the short test— relating to the exercise of discretion and independent judgment—requires consideration and evaluation of alternative courses of action and the making of a decision after the possibilities have been considered. 29 C.F.R. § 541.207(a)(2004). The exercise of discretion must relate to matters of consequence, but final decision making authority over such matters is unnecessary. *Lott v. Howard Wilson Chrysler–Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir.2000)(citing *Reich v. John Alden Life Ins., Co.*, 126 F.3d 1, 13 (1st Cir.1997)). In this case, Defendants argue that she exercised independent judgment in her job, pointing to the fact that she developed a filing system for the form letters and a new tracking system. *Id.* at 5. Defendant's also point out that Plaintiff recommended a process in which warranty information was put on a label inside kitchen cabinets in the new homes sold, and, most importantly, she decided what type of contractor to call when complaints were made and the information to be provided. *Id.* According to Defendant, "Smith also made judgment calls when emergency situations arose." *Id.*

The Court's review of the deposition testimony in this case, however, establishes that Plaintiff's task of mailing form letters and documents was not discretionary in nature. Plaintiff utilized pre-made forms and did not determine the content of the letters, nor did she decide when the letters should be mailed out. (Pl. Dep. at 56); (Chapman Dep. at 253); (Been Dep. at 80);(Palmer Dep. at 22–26)("The documents were on the computer. So all we did was fill in the blanks and send them out to the customer."). Similarly, the deposition testimony shows that Plaintiff exercised no discretion or independent judgment when fielding customer complaints. There was typically only one subcontractor to contact in response to a complaint. (Palmer Dep. at 176). Her role was limited to mere referral from a list provided to her. *Id.* Finally, while Plaintiff may have had limited discretion on one occasion in developing a filing system for the warranty letters, Defendants have not shown that the development of this clerical system was a matter of any consequence. *See* (Palmer Dep. at 176). Furthermore, Palmer ultimately decided not to implement Plaintiff's system, illustrating that Plaintiff did not have, in actuality, discretionary authority over this project. *Id.* Accordingly, this Court finds that none of Plaintiff's duties were discretionary in nature. *Cusumano*, 2005 U.S. Dist. LEXIS 30257 at *17.

In sum, this Court finds, as a matter of law, that Plaintiff was a non-exempt employee under the FLSA.[8] (Deposition of Sharon Walker ("Walker Dep.") at 21, 37–38). *See Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 582–83 (6th Cir.2004)(employee was not exempt where primary job did not relate to employer's administrative

---

8. In fact, Defendants' Chief Financial Officer, Sharon Walker, admitted that Plaintiff was a non-exempt employee. The following is an except from Walker's deposition:

    Q. Okay. Are warranty department employees salaried nonexempt employees? [By Plaintiff's counsel].

    A. They are. [By Sharon Walker].

    Q. Would you include [the] manager in there? You asked if warranty employees. You mean manager on down? [By Defense counsel].

    Yes. [By Plaintiff's counsel].

    A. I'm sorry. Manager is exempt. [By Sharon Walker].

    Q. Okay. So Hope Palmer is an exempt employee? [By Plaintiff's counsel].

    A. Yes. [By Sharon Walker].

    Q. **But the warranty clerks and the warranty associates are non-exempt?** [By Plaintiff's counsel].

    A. **That is correct.** [By Sharon Walker]. (Walker Dep. at 37–38) (emphasis added).

operations; he did not advise management, plan, negotiate, represent the business, make purchases, promote sales, or engage in research or control; employee did not perform work of substantial importance, in that he did not make significant input into decisions affecting company); *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1081–82 (8th Cir.2000)("site manager" was not exempt where her duties included collecting applications, verifying references, contacting potential applicants, preparing reports, verifying payments and writing receipts, performing minor repairs, cleaning, and forwarding invoices for payment; duties did not require exercise of discretion or independent judgment). Accordingly, the Court **RECOMMENDS** that partial summary judgment be **GRANTED** to Plaintiff as to liability on her claim for overtime compensation under the FLSA.

### 2. Damages

### (a) Damages for unpaid overtime and liquidated damages

■ "Any employer who violates [29 U.S.C. § 207] shall be liable to the employee … in the amount of … [her] unpaid overtime compensation … and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A court may, however, award no liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. The determination of whether an employer acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA has both a subjective and objective component. *Dybach v. Florida Dep't of Corrections*, 942

F.2d 1562, 1566 (11th Cir.1991). Subjective good faith means the employer has an honest intention to ascertain what the FLSA requires and to act in accordance with it. *Id.* Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA. *Id.* In addition, "[g]ood faith requires some duty to investigate potential liability under FLSA." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir.1979).[9] An employer who knew or had reason to know that the FLSA applied cannot establish good faith as a defense. *Reeves v. International Tel. & Tel. Corp.*, 616 F.2d 1342, 1352–53 (5th Cir.1980). *See also Friedman v. S. Fla. Psychiatric Assocs.*, 2005 WL 1540129 (11th Cir.2005)(no good faith where employer read FLSA 20 years prior and thought employee was exempt under prior legislation)(unpublished decision); *Spires v. Ben Hill County*, 980 F.2d 683, 689 (11th Cir.1993)("[L]iquidated damages are mandatory absent a showing of good faith."); *Joiner v. Macon*, 814 F.2d 1537, 1539 (11th Cir.1987) (same).

This Court finds that Plaintiff is entitled to both overtime and liquidated damages. As discussed above, Defendants failed to show Plaintiff was an exempt employee under the FLSA. Accordingly, she should be compensated for all unpaid overtime. In addition, the Court finds that Plaintiff is entitled to additional liquidated damages, equal to the amount of unpaid overtime, because there is no fact issue as to whether Defendants failed to pay Plaintiff overtime in good faith or whether they had a reasonable basis for not paying Plaintiff overtime. In the instant case, the evidence shows that Defendants knew Plaintiff was a non-exempt employee who worked over forty hours per week, but

---

**9.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

nevertheless failed to pay her overtime. First, Defendants' Employee Guidebook expressly states that non-exempt employees are entitled to overtime under federal law. *See* (Def. Resp. To SMF at 24);(Been Dep. at Ex. 30—Employee Guidebook). Defendant Homelife's CFO testified that Plaintiff was a non-exempt employee in its Warranty Department. (Walker Dep. at 21). Next, it is undisputed that Plaintiff was never paid overtime and that she worked over forty hours per week from the inception of her employment until she suffered an on-the-job injury in July 2003. (Def. Resp. To SMF at 21–23). Plaintiff's supervisors testified that Plaintiff's primary duties were clerical in nature and that they were aware that non-exempt employees were entitled to overtime. (Walker Dep. at 22); (Chapman Dep. at 194–195); (Palmer Dep. at 49). *See also* (Def. Resp. To SMF at 18—25). Finally, Defendants admit that "Ms. Smith regularly worked more than forty hours per week, but was never paid overtime wages by Defendants by for the hours she worked over 40 in any workweek." *See* (Pl. SMF at 23). As a result, this Court finds that Plaintiff is entitled to liquidated damages.

**(b) Attorneys' fees and costs**

With respect to Plaintiff's claim for attorneys' fees, Section 216(b) of the FLSA provides that in any action successfully brought under its provisions, the court shall "allow a reasonable attorney's fee to be paid by the defendant." Because Plaintiff should prevail on her FLSA claim, this Court finds that she should be awarded her reasonable attorneys' fees and costs associated with pursuing her FLSA claim. *See* 29 U.S.C. § 216(b).

**(c) Reinstatement and injunctive relief**

██ Plaintiff, in her initial motion for summary judgment, seeks an order of reinstatement and injunctive relief under 29 U.S.C. § 216(b). [Doc. 77] (Pl. Br. at 7). Section 216(b) provides for "equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3) [29 U.S.C. § 215(a)(3)], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). 29 U.S.C. § 215(a)(3) is the anti-retaliation provision of the FLSA, which makes in unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act." 29 U.S.C. § 215(a)(3). The Eleventh Circuit has observed that "[t]he remedies § 216(b) provides to employees for violations of the FLSA's anti-retaliation provision are broader than those available for violations of the wage and overtime provisions." *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1337 (11th Cir.2002). "For violations of the wage and overtime provisions, the FLSA *does not* list equitable relief as an available remedy in [a non-retaliation] employee suit." *Id.* (emphasis added).

In response to Plaintiff's request for reinstatement and injunctive relief, Defendants correctly point out that these equitable remedies are only available when the employee charges a violation of the FLSA's anti-retaliation provision, a claim not made herein. [Doc. 88](Def. Resp. at 7). In her reply, Plaintiff does not address this argument. [Doc. 99]. As set forth above, Defendant's argument appears well-taken. *Bailey*, 280 F.3d at 1337. Accordingly, this Court **RECOMMENDS** that partial summary judgment be **DENIED** with respect to Plaintiff's claim for equitable relief. In conclusion, this Court **RECOMMENDS** that partial summary judgment be **GRANTED** on Plaintiff's FLSA claim. This Court further **RECOM-**

**MENDS** that Plaintiff be awarded damages for unpaid overtime wages; that she be awarded liquidated damages; and that she be awarded her reasonable attorneys' fees and costs. The Court does not find, however, that Plaintiff is entitled to equitable relief; therefore, summary judgment should be **DENIED** as to Plaintiff's claims for equitable relief in the form of reinstatement or injunction. The Court also notes that this recommendation is for partial summary judgment as to liability; the amounts of damages must be proven at trial.

## B. Defendants' Motion for Summary Judgment: Initial Matters

As an initial matter, in connection with Defendants' motion for summary judgment, the Court observes that Plaintiff has filed unauthorized documents supplemental without seeking or obtaining leave of Court. These documents are "Plaintiff's objections and response to Defendants' objections to Plaintiff's statement of additional facts" [Doc. 114] and "Plaintiff's objections to ·Defendants' reply to Plaintiff's response to Defendants' statement of undisputed material facts" [Doc. 115].

The Local Rules provide that, during the summary judgment stage, "the parties shall not be permitted to file supplemental briefs and materials, with the exception of a reply by the movant, except upon order of the court." LR 56.1A. Because Plaintiff did not obtain leave of this Court to file the supplemental documents and they are not otherwise authorized by the rules, the Court will not consider them in connection with this case. *See Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 959 (N.D.Ga.1995). Accordingly, "Plaintiff's objections and response to Defendants' objections to Plaintiff's statement of additional facts" [Doc. 114] and "Plaintiff's objections to Defendants' reply to Plaintiff's response to De-

fendants' statement of undisputed material facts" [Doc. 115] are hereby **STRICKEN.**

On the other hand, the Court will consider Plaintiff's objection to Defendants' reply [Doc. 113] and Defendants' response thereto [Doc. 116]. In their reply brief, Defendants raise a new ground for summary judgment as to all of Plaintiff's claims under the doctrine of res judicata. [Doc. 110] (Def. Reply at 1–6). In response, Plaintiff filed an objection, asserting that Defendants may not raise new grounds for summary judgment for the first time in their reply. [Doc. 113]. Defendants respond to this argument by asserting that their res judicata defense can be raised because it is based on new evidence that became available after the filing of their initial motion for summary judgment. [Doc. 116].

Defendants have inappropriately raised res judicata for the first time in their reply brief, without first seeking leave of Court. The Court can either disregard the argument or allow Plaintiff the opportunity to respond. *See, e.g., International Telecomms. Exchange Corp. v. MCI Telecomms. Corp.*, 892 F.Supp. 1520, 1531 (N.D.Ga.1995); *United States v. Georgia DNR*, 897 F.Supp. 1464, 1471 (N.D.Ga. 1995); *see also Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1364 (11th Cir. 1997); *United States v. Kimmons*, 1 F.3d 1144, 1145 (11th Cir.1993). Upon consideration, the Court declines to consider this new argument at this time.[10] Should this report and recommendation be adopted by the district judge, however, the Court **RECOMMENDS** that Defendants be given ten days to file an out-of-time motion to dismiss or for summary judgment, based upon the doctrine of res judicata, to which Plaintiff may respond as provided by law.

Finally, Defendants seek summary judgment, on the merits, as to all of Plaintiff's

---

**10.** Defendants' reply was filed April 6, 2006.

[Doc. 110].

claims. [Doc. 85]. Because the Court recommends that Plaintiff be granted summary judgement as to her FLSA claim, the Court will only analyze Defendants' request for summary judgement as to Plaintiff's claims brought under the ADA and ADEA, and **IT IS RECOMMENDED** that Defendant's motion for summary judgment on the FLSA claim be **DENIED** per the discussion above.

## C. Defendants' motion for summary judgment on Plaintiff's ADA claim

The ADA is designed "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1), (b)(4). There is no direct evidence of disability discrimination in this case and the parties do not contend otherwise. Accordingly, the *McDonnell Douglas* burden shifting framework is applicable to this case. *See Collado v. United Parcel Service Co.*, 419 F.3d 1143, 1149–1150 (11th Cir.2005) (applying *McDonnell Douglas* framework to ADA case involving circumstantial evidence). Under this framework, Plaintiff initially has the burden of establishing a prima facie case of disability discrimination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir.2004)(citing *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir.2001)). Once Plaintiff establishes a prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for terminating Plaintiff. *Id.* If Defendants meet this burden, Plaintiff must produce some evidence that Defendants' articulated reason is "unworthy of credence," and a pretext for discrimination, in order to survive summary judgment. *Id.*

### 1. Plaintiff's Prima Facie Case under the ADA

■ To establish a prima facie case of employment discrimination under the

ADA, a plaintiff must demonstrate that (a) she has a disability, (b) she is a "qualified individual," which is to say, able to perform the essential functions of the employment position that she holds or seeks with or without reasonable accommodation, and (c) the defendant unlawfully discriminated against her because of the disability. *Reed v. The Heil Co.*, 206 F.3d 1055, 1061 (11th Cir.2000); *see also* 42 U.S.C. § 12111(8). Plaintiff claims that Defendants violated the ADA when they failed to provide her with a reasonable accommodation for her disability and terminated her based on her disability. [Doc. 108](Pl. Resp. at 9–13). Defendant argues that it is entitled to summary judgment on Plaintiff's ADA claim because she cannot satisfy any element of her prima facie case. [Doc. 85](Def. Br. at 3–13).

The ADA defines "disability" as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). The definitions mandate a strict interpretation and sets a demanding standard for qualifying an individual as disabled under the law. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). In the instant case, Plaintiff claims that she meets all three prongs of the definitions of disabled under the ADA.

The court generally determines the existence of a disability, under the first definition, by making an assessment of whether: (1) a plaintiff's injury is a physical impairment; (2) the activities that the plaintiff claims are limited by her injury qualify as major life activities under the ADA; and (3) the injury substantially limits the major life activities she identifies. *See Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct.

2196, 141 L.Ed.2d 540 (1998). The Supreme Court has observed "that these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled...." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Determining whether a claimed impairment constitutes a disability and whether an identified endeavor constitutes a major life activity under the ADA are questions of law for the Court. *See Bragdon v. Abbott,* 524 U.S. 624, 661, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Mont–Ros v. City of West Miami,* 111 F.Supp.2d 1338, 1351 (S.D.Fla.2000); *Vaughn v. Nationsbank Corp.,* 137 F.Supp.2d 1317, 1324 (N.D.Ga. 2000).

In the instant case, Plaintiff asserts that she is "severely restricted from doing activities that are of central importance to most people's daily lives (e.g. walking, lifting and performing manual tasks)". [Doc. 108](Pl. Resp. at 4).[11] Lifting, however, is generally not a major life activity.[12] *See* 29 C.F.R. § 1630.2(I); *Carr v. Publix Super Mkts., Inc.,* 2006 WL 267133, *7 n. 3 (11th Cir.2006)("[W]e doubt that a lifting limitation states a per se ADA disability.")(unpublished opinion); *cf. Nuzum v. Ozark Auto. Distribs., Inc.,* 432 F.3d 839 (8th Cir.2005) (although lifting may be designated as a major life activity, a finding of disability turns not on a particular motor ability limitation, but on the net effect of the limitation on the set of activities that are of central importance to most people's daily lives).

Regarding Plaintiff's claims that her ability to walk and perform manual tasks is substantially limited, the evidence not only fails to establish that she is substantially limited, but, instead, demonstrates that Plaintiff's ability to perform these activities is not, in fact, limited.[13] "In determining whether an individual is substan-

---

**11.** Plaintiff does not allege that she was precluded from driving, and, accordingly, the Court need not address either this argument or Plaintiff's argument that Defendants accommodated her driving restriction from the inception of her employment and then "withdrew" this accommodation in August 2003. [Doc. 108](Pl. Br. at 2–5)(describing Plaintiff's alleged physical limitations).

**12.** Although the Eleventh Circuit has not yet addressed the issue of a lifting restriction as constituting a disability, several other circuits have held that a lifting restriction does not constitute a significant restriction on one's ability to work or perform any other major life activity. *Compare Reed v. Heil Co.,* 206 F.3d 1055, 1061–62 (11th Cir.2000)(declining to determine whether lifting restriction fails as a matter of law to establish a disability within meaning of ADA); with *Marinelli v. City of Erie, Penn.,* 216 F.3d 354, 363–64 (3d Cir.2000)(holding ten-pound lifting restriction not substantially limiting); *Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996) (finding that inability to perform heavy lifting does not render a person substantially limited in the major activities of lifting and working); *Williams v. Channel Master Satellite Sys., Inc.,*

101 F.3d 346, 349 (4th Cir.1996)(declaring, as a matter of law, that twenty-five pound lifting limitation "does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"). Moreover, Plaintiff has produced no evidence comparing her own lifting capability to that of the average worker in order to meet her initial burden of proving that she has a substantial limitation in the activity of lifting. Accordingly, the Court need not address Plaintiff's claim that Defendants agreed not to require her to carry the mail bucket or other heavy objects and later "withdrew" this alleged accommodation in August 2003.

**13.** The term "substantially limited" is defined as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

tially limited in a major life activity, . . . the following factors should be considered: the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." *Toyota*, 534 U.S. at 196, 122 S.Ct. 681 (internal quotations and citations omitted); 29 C.F.R. § 1630.2(j)(2)(i)-(iii). The plaintiff must show that "the extent of the limitation caused by their impairment in terms of their own experience . . . is substantial." *Id.* at 198, 122 S.Ct. 681 (internal quotations and citations omitted).

Here, Plaintiff admits that she was " 'pretty active' prior to her workplace injury", which occurred on June 20, 2003. (Pl. Resp. To SMF at 33–34). The evidence does not show that her ability to walk or perform manual tasks was restricted prior to this date. Plaintiff further admits that six months after her injury, on December 15, 2003, she was released by her doctor to return to work. (Pl. Resp. To SMF at 39). At this time, she began a new job where her responsibilities included driving to office buildings, walking the properties to check if repairs are needed, as well as faxing and completing paperwork. (Pl. Resp. To SMF at 49); (Pl. Dep. at 30–35). Nevertheless, Plaintiff argues that she suffers from pain in her neck and shoulders, walks with a limp, walks slower than the average person, and uses a cane. [Doc. 108](Pl. Br. at 2–5).

"[S]omeone who walks, sits, stands or sleeps 'moderately below average' is not disabled under the Act." *Rossbach v. City of Miami*, 371 F.3d 1354, 1358 (11th Cir. 2004). Moreover, "a diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks, as well as a lifting restriction, [does] not constitute a disability under the ADA." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1222 (11th Cir.2000). By Plaintiff's own admissions, the duration and impact of her impairment resulting from her on-the-job injury lasted, at most, six months, and she is currently able to walk and perform manual tasks at her new job. Although Plaintiff alleges pain and a diminshed capacity to walk, lift and perform manual tasks, this does not render her disabled under the precedent in this circuit. *See Carr*, 2006 WL 267133 (in light of employee's testimony that he was able to care for himself without assistance and that he had "pretty good" use of his right hand, summary judgment granted for employer on ADA claim); *Chanda*, 234 F.3d at 1222; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1227 (11th Cir. 1999).[14] As a result, this Court finds that Plaintiff is not disabled under the first prong of the disability definition under the ADA. *See Rossbach*, 371 F.3d at 1359 (employees not disabled where impairments prevent them from standing, sitting, walking and sleeping for "extended periods of time").

---

29 C.F.R. § 1630.2(j)(1)

**14.** In *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1227 (11th Cir. 1999), the Eleventh Circuit affirmed a decision that a plaintiff with coronary heart disease was not disabled under the ADA. The Eleventh Circuit emphasized that although the plaintiff's heart disease did constitute a physical impairment, it did not rise to the level of a disability, as defined by the ADA, because the plaintiff did not demonstrate that she was substantially limited in any of her major life activities, which she identified as running, performing manual tasks, and lifting or walking. *Id.* The court noted that the plaintiff admitted in her deposition that she could engage in these activities and only provided conclusory allegations of diminished capacity. *Id.* at 1227–28. "Conclusory allegations without specific supporting facts have no probative value." *Id.* at 1228 (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985)).

Second, an individual may be entitled to protection under the ADA if they have a record of being disabled. A record of impairment means that the plaintiff "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). "This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." *Hilburn,* 181 F.3d at 1229. Again, as noted above, Plaintiff's admissions establish that she did not have a record of a substantially limiting impairment. Because Plaintiff does not have an impairment that limits a major life activity, there can be no record of such impairment. *See Gordon v. MCG Health, Inc.,* 301 F.Supp.2d 1333, 1341 (S.D.Ga. 2003)("Since the plaintiff does not have an impairment that limits a major life activity, there is also no 'record of such impairment.' ").

■ Finally, a person may be disabled under the ADA if she is "regarded by" her employer as disabled, meaning that she "(1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the ADA." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1327 n. 2 (11th Cir.1998) (citing 29 C.F.R. § 1630.2(*l*)). "The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled." *Sutton v. Lader,* 185 F.3d 1203, 1209 (11th Cir.1999)(Rehabilitation Act case). The plaintiff must show not only that her employer perceived her as unable to perform the relevant "class of jobs," but that she is also unable to perform other jobs in the area that utilized "similar training, knowledge, skills or abilities." *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1370 (11th Cir.1998).

Here, there is no evidence that Defendants regarded Plaintiff has being disabled. Although Plaintiff asserts that Defendants did not require her to drive or lift heavy objects due to her impairments, she did not establish that any of her alleged impairments substantially limit a major life activity; by her own account, Plaintiff was "pretty active"—she was able to work full-time, walk and perform manual tasks during six of the eight months she was employed by Defendants. "Merely proving the existence of a physical impairment, without addressing any limitation on major life activities, is not sufficient to prove disability under the Act." *Standard,* 161 F.3d at 1327. Furthermore, Plaintiff's argument that Defendants took an "unusual interest in her physical impairments", with respect to her Worker's Compensation claims, is without merit. "[A] plaintiff's receipt of disability leave or disability insurance [is] insufficient to show that an impairment substantially limited a major life activity, or that the plaintiff had a record of a disability." *Gordon,* 301 F.Supp.2d at 1342. That Defendants communicated with her physicians who provided her healthcare under the Workers' Compensation laws does not establish that she was regarded as disabled—Defendants still allowed Plaintiff to work in the Warranty Department while she was injured and there is no evidence they regarded her as precluded from a class of jobs, let alone her job as a Warranty Clerk.

The fact remains that Plaintiff failed to adduce evidence that any of her major life activities were substantially limited by her physical ailments. "If the ADA were broadened to include any limitation or ailment, everyone would meet that definition of disability. The ADA was created to

provide legal recourse to those with severe ailments." *Alpert v. DeKalb Office Env'ts, Inc.*, 206 F.Supp.2d 1280, 1286 (N.D.Ga. 2001). Summary judgment, therefore, is appropriate for Defendants on Plaintiff's ADA claim.

## 2. Defendant's articulated reason for terminating Plaintiff

■ Although, generally, a court's analysis ends with a finding that the plaintiff failed to establish a prima facie case, *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984), the Court will nevertheless address the remaining steps to show that summary judgment would be appropriate even if Plaintiff had established a prima facie case of disability discrimination. Once Plaintiff makes his prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for their actions. Defendants' burden of articulating a legitimate, non-discriminatory reason is "exceedingly light," because it is merely one of production, and not proof. *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138 (11th Cir.1983) (quoting *Burdine*, 450 U.S. at 254–255, 101 S.Ct. 1089); *see also Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982). Because Plaintiff is not disabled, the Court finds that Defendants were not required to provide her with accommodation and that the alleged denial of such does not constitute an actionable adverse employment action. Accordingly, the only adverse action necessitating an explanation to satisfy Defendants' burden at this stage is the decision to terminate Plaintiff's employment.

In the instant case, Defendants assert that they terminated Plaintiff "primarily" for failing to produce her driver's license. *See* (Def. SMF at 31); (Chapman Dep. at 24–25); (Deposition of Jon Been ("Been Dep.") at Ex. 28—separation letter). The separation letter also stated that Plaintiff failed to provide truthful information on her employment application and that a significant number of inaccuracies existed regarding her medical situation. (Been Dep. at Ex. 28). "These facts combined with your previous warning regarding your behavior and performance constitutes grounds for employment termination." *Id.* This explanation satisfies Defendant's burden of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden now shifts back to Plaintiff, who must be afforded "a fair opportunity to show that [Defendants'] stated reason [is] in fact pretext." *McDonnell Douglas Corp.*, 411 U.S. at 804–807, 93 S.Ct. 1817.

## 3. Pretext

■ Under the *McDonnell Douglas* burden shifting framework, once the defendant proffers sufficiently probative, credible, non-discriminatory reasons for its actions, as they have in the instant case, Plaintiff must come forward with specific evidence tending to show that such reasons were a pretext for discrimination. Although Plaintiff argues that she provided Defendants with her "driver's license information", and, additionally, that her driver's license was not required, the record fails to invalidate Defendants' *primary* reason for Plaintiff's termination.[15] *See Willis v. Conopco, Inc.*, 108 F.3d 282, 287 (11th Cir.1997) (finding summary judg-

---

15. When an employer proffers several reasons for its adverse action, it is entitled to summary judgment so long as at least one of the reasons is found to be legitimate. In *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–

28 (11th Cir.1997), the employer proffered three legitimate, nondiscriminatory reasons why it had promoted another employee instead of the plaintiff. The Eleventh Circuit

ment proper where ADA plaintiff failed to offer evidence to raise an inference that defendant's articulated explanation for her termination was pretext for discrimination); *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 952 (N.D.Ga.1995)(concluding that plaintiff was not entitled to relief under the ADA where she failed to present evidence that defendant's legitimate, non-discriminatory reasons for her termination were pretextual). While Plaintiff provided Defendants with her Georgia ID card and wrote her driver's license number on a parking permit application (Chapman Dep. Exh. 62—Georgia ID card); (Palmer Dep. Ex. 18—parking application), this does not show that she ever produced her actual driver's license, or a copy of it, for Defendants, as required.

Next, but for Plaintiff's own belief, there is no evidence that Defendants did not require a copy of Plaintiff's driver's license for its general insurance liability policy. The administrator of the policy, Lori Chapman, testified that the general liability policy required that Defendants have driver's license information for all employees required to drive for business purposes; that Plaintiff, like all employees in the warranty department, was required to drive to the post office to pick up mail; and that Plaintiff did not present Defendants with evidence of her license. (Chapman at 25–26). Absent evidence to the contrary, the Court finds no reason to doubt Defendants' articulated reason for Plaintiff's termination. Because Plaintiff failed to satisfy her prima facie case under

the ADA and failed to show an issue of fact as to pretext, the Court **RECOMMENDS** that summary judgment be **GRANTED** as to her claim for disability discrimination under the ADA.

### D. Defendant's motion for summary judgment on Plaintiff's ADEA claim

The ADEA, which protects individuals over the age of 40,[16] makes it unlawful for an employer "to discharge ... or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a). In age discrimination cases, the plaintiff bears the ultimate burden of proving that age was a determinative factor in the employer's termination decision. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989). In assessing motions for summary judgment under the ADEA, the principles governing the order and allocation of proof are the same as those applied to Title VII claims. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir.1993).

### 1. Plaintiff's prima face case of age discrimination

Plaintiff can establish a prima facie case of age discrimination under the ADEA by showing that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action;[17] and (4) she was replaced with someone younger, or her em-

---

"considered the evidence related to each of the three proffered nondiscriminatory reasons." *Id.* 106 F.3d at 1539. After analyzing each reason separately, the court concluded that the plaintiff had presented sufficient evidence to show that two of the reasons were pretextual, but he had failed to present sufficient evidence to show the third reason was pretextual. *Id.* at 1539–43. Because the plaintiff failed to rebut one of the three reasons, the court held that the defendant was

entitled to judgment as a matter of law. *Id.* at 1543.

**16.** 29 U.S.C. § 631 (2006)("The prohibitions in this Act shall be limited to individuals who are at least 40 years of age.").

**17.** Defendant argues in its motion for summary judgment that several retaliatory and/or discriminatory actions were taken more than 180 days before Plaintiff filed her EEOC

ployer treated similarly situated younger employees more favorably. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir.2001). A plaintiff must demonstrate each of these four elements to fulfill the prima face case. *Maynard v. Board of Regents of the Division of Universities of the Florida Department of Education*, 342 F.3d 1281, 1289 (11th Cir.2003).

In this case, it is undisputed that Plaintiff is a member of a protected class (Pl. Resp. To Def. SMF at 16); she was qualified for her position (Palmer Dep. at 18–19); that she suffered an adverse employment action when she was terminated (Pl. Resp. To Def. SMF at 31); and that she was replaced with someone younger (Def. Resp. To Pl. Interrogatories ¶ 20). As a result, the Court finds that Plaintiff can satisfy her prima facie case of age discrimination. Accordingly, the burden now shifts to Defendants to articulate a non-discriminatory reason for her termination.

**2. Defendants' articulated reasons for terminating Plaintiff**

██ As noted with respect to Plaintiff's ADA claim, Defendants' burden of articulating a legitimate non-discriminatory reason for terminating Plaintiff is only that of production and has been characterized as "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994); *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141 (11th Cir.1983). Also, this burden involves no credibility determination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). So long as Defendants state "a clear and reasonably specif-

ic" non-discriminatory basis for its actions, it has discharged its burden of production. *Burdine*, 450 U.S. at 254–255, 101 S.Ct. 1089. In the present case, as discussed with regard to her ADA claim, Defendants state that the primary reason for Plaintiff's termination was her failure to produce her driver's license, as requested. Defendants also point to the fact that Plaintiff provided inaccurate information and was insubordinate. [Doc. 85](Def. Br. at 17). Therefore, Defendants have rebutted Plaintiff's prima facie case of age discrimination with legitimate, non-discriminatory reasons for its action in terminating her.

**3. Pretext**

Once the employer meets its burden of articulating a nondiscriminatory reason for its action, the presumption of discrimination from the prima facie case is eliminated. *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. To survive summary judgment, Plaintiff must point to evidence that creates a genuine issue of material fact that Defendants' articulated, nondiscriminatory reason is, instead, pretext for unlawful discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804–807, 93 S.Ct. 1817; *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 ("[P]laintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.")(quotations omitted); *Combs*, 106 F.3d at 1528. In the instant case, Plaintiff asserts that Palmer made ageist remarks to her and that younger employees were treated more favorably than she. [Doc. 108](Pl. Br. at 19–20).

██ The Court will first address Palmer's alleged ageist remarks. Plaintiff testi-

charge and, therefore, are procedurally-barred. [Doc. 85](Def. Br. at 21–22). Because Plaintiff only asserts a discriminatory termination ADEA claim in her response

[Doc. 108](Pl. Br. at 19–20), the Court need not address Defendant's procedural argument.

fied that, around the time that she was hired, Palmer told her that she was interviewing prospective employees for the Warranty Department and that she was "going to hire someone young so they can tote the mail." (Pl. Dep. at 177). Plaintiff explained that "she [Palmer] first made the age comment when she was interviewing for the first time, that she was going to hire somebody, to add a person to just her and I working." (Pl. Dep. at 184). Plaintiff also testified that she was "thankful that [Palmer] was going to hire, you know, someone to tote the mail. Because [Palmer] was already complaining on a regular basis about it. I mean, she was complaining that she aggravated her shoulder, aggravated her knee; you know, she showed me her swollen knee, climbing the stairs, you know." *Id.*

These remarks are likewise insufficient to show pretext. Rather than suggesting that Defendants terminated Plaintiff because of her age, the statements show that *both* Palmer and Plaintiff wanted an *additional* employee to be hired who could tote the mail. (Pl. Dep. at 184). Plaintiff does not contend that this comment constitutes direct evidence, but, instead, "strong circumstantial evidence of age discrimination and pretext." [Doc. 108](Pl. Br. at 20 n. 102). Therefore, the Court need not assess whether these remarks are sufficient to constitute direct evidence of age discrimination. Stray ageist comments, however, especially those made outside the decision-making process, such as Palmer's, are typically insufficient alone to prove pretext. *See, e.g, Steger v. Gen. Elec. Co.,* 318 F.3d 1066, 1079 (11th Cir.2003)(quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)(O'Connor, J. concurring)) ("statements by nondecisionmakers, or state-

ments by decisionmakers unrelated to the decisional process at issue will not satisfy the employee's burden."); *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655–658 (5th Cir.1996)(finding a statement by the decisionmaker that another employee was "old" to be insufficient to establish a prima facie case of age discrimination).

Moreover, Palmer was fifty years old when she hired Plaintiff. (Pl. Resp. To SMF at 3, 16). A plaintiff faces a "difficult burden" when the decisionmaker involved is over age forty and within the class of persons protected by the ADEA. *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1471 (11th Cir.1991); *see also Waldemar v. American Cancer Soc'y,* 971 F.Supp. 547, 556 (N.D.Ga.1996). The fact that Palmer was fifty when she hired Plaintiff, who was fifty three at the time, permits a "permissible inference" that no discrimination occurred. *Williams v. Vitro Servs. Corp.,* 144 F.3d 1438, 1442–1443 (11th Cir.1998); *see also Grossmann v. Dillard Dep't Stores, Inc.,* 109 F.3d 457, 459 (8th Cir.1997)(stating that the plaintiff's contention that the decisionmaker who had hired her had "suddenly turned against older workers four years" after he had hired her and discharged her due to age discrimination was "more than reasonable people can swallow"). As a result, the Court does not find Palmer's statements, made around the time that Plaintiff was hired, to create an issue of fact that pretext for age discrimination was a motivation for Palmer's decision to terminate Plaintiff.

■ Next, Plaintiff alleges that Defendants denied extra work hours and flex time to Plaintiff, but allowed younger employees to work extra hours and flex time, and that this is evidence of age discrimination, demonstrating that Defendant's reasons were pretextual.[18] Plaintiff testified

---

**18.** Plaintiff does not allege that the alleged denial or work hours or flex time was an adverse action with respect to her ADEA

claim; instead, she alleges that this is evi-

that Palmer selected Kimberly Poss, an younger employee in Homelife's accounting department, to work extra hours during the evening, instead of Plaintiff. *See* (Pl. Dep. at 147). Plaintiff also argues that she was counseled for working extra hours, whereas a younger employee, Kristi Setzer, was commended and given wage increases for working extra hours. [Doc. 108](Pl. Br. at 20). Although Defendants acknowledge these allegations in the brief [Doc. 85](Def. Br. at 14), they do not argue or refute Plaintiff's contentions as to her comparators. [Docs. 85, 110].

As a result, Plaintiff's evidence showing that younger employees working in the Warranty Department as clerks were treated more favorably than she was raises an inference of pretext. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817 ("Especially relevant to such a showing [of pretext] would be evidence that employees involved in acts against [the employer] of comparable seriousness ... were nevertheless retained"); *accord McDonald v. Santa Fe Trail Trans. Co.*, 427 U.S. 273, 282–83, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Jones v. Gerwens*, 874 F.2d 1534, 1541 n. 12 (11th Cir.1989); see also *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ("Proof of discriminatory motive ... can in some situations be inferred from the mere fact of differences in treatment"). Based on Plaintiff's testimony, Poss and Setzer appear to be apt comparators because they worked in the Warranty Department performing the same clerical tasks as Plaintiff. (Pl. Dep. at 147). Coupled with her prima facie case,[19] and absent evidence explaining why Poss and Setzer were treated more favorably,[20] the alleged disparate treatment between Plaintiff and the similarly situated younger employees creates a fact issue at to pretext for age discrimination. Although Palmer's statement does not appear to go to the decision to terminate Plaintiff, the fact the Defendants' allowed younger employees in the Warranty Department to work extra hours, while counseling Plaintiff for doing so, may allow a jury to find that Defendants decided to terminate Plaintiff because of her age. Accordingly, the undersigned **RECOMMENDS** that summary judgment be **DENIED** as to Plaintiff's claim for age discrimination.

**E. Defendant's motion for summary judgment as to Plaintiff's retaliation claims**

Plaintiff claims that Defendants terminated her in retaliation for engaging in protected activities under both the ADA and ADEA. Because the requisite elements are the same to prove retaliation under both statutes, the Court will analyze these claims together, using the McDonnell Douglass framework under Title VII, to determine whether there is a fact issue

---

dence that she was terminated based on her age. [Doc. 108](Pl. Br. at 19–20).

**19.** "The plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case." *Hairston*, 9 F.3d at 921; *Burdine*, 450 U.S. at 256 n. 10, 101 S.Ct. 1089 ("Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.").

**20.** "For issues ... on which the non-movant would bear the burden of proof at trial, ... the moving party [for summary judgment] simply may show [ ]—that is, point [ ] out to the district court—that there is an absence of evidence to support the non-moving party's case." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–1117 (11th Cir.1993)(discussing burden-shifting under Rule 56) (citations and quotations omitted). Defendants in this case have not pointed to an absence of evidence in Plaintiff's comparator argument in her ADEA claim.

with respect to Plaintiff's retaliation claims. See *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir.2002)(applying same prima facie case to retaliation claims brought under Title VII, ADEA and ADA).

In order to establish a prima facie case of retaliation under both the ADA and ADEA, Plaintiff must show: (1) statutorily protected expression; (2)an adverse employment action; and, (3) a causal link between the protected expression and the adverse action. *Gregory v. Georgia Dept. of Human Res.*, 355 F.3d 1277, 1279 (11th Cir.2004). In the instant case, the only adverse action Plaintiff asserts with respect to her retaliation claim is her termination.[21] [Doc. 108](Pl. Br. at 20–22). Defendants dispute whether Plaintiff engaged in statutorily protected activity under the ADA and ADEA. [Doc. 85](Def. Br. at 18–20).

■ The applicable retaliation provisions state: "It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or litigation under this chapter." 42 U.S.C. § 12203(a)(ADA anti-retaliation provision); 29 U.S.C. § 623(d)(ADEA anti-retaliation provision). In the instant case, Plaintiff asserts that she engaged in protected activity under the ADEA on or about July 8, 2003, when she questioned Homelife as to why it permitted significantly younger employees to work extra hours in the Warranty Department, when she was not permitted to do so. [Doc. 108] (Pl. Br. at 21). Plaintiff's

testimony, however, does not show that she actually complained that she was being passed over for work in favor of younger employees; instead, the testimony cited by Plaintiff shows that she complained about not being allowed to work flex hours. See (Pl. Dep. at 144–148). Therefore, the Court finds that Plaintiff did not engage in statutorily protected activity because her testimony reveals that she did not actually complain about age discrimination. *Id.*; See *Ammons v. Zia Co.*, 448 F.2d 117, 119 (10th Cir.1971)(complaint, for reasons other than discrimination, that employees were being underpaid was not statutorily protected); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir.1989)("vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice.").

■ Second, Plaintiff contends she engaged in protected activity under the ADA when she complained that Homelife was disregarding her doctor's medical restrictions. *Id.* Plaintiff also contends she engaged in protected activity under the ADA when she protested Palmer's August 1, 2003, directive that she retrieve the mail. *Id.* Thus, Plaintiff proceeds under the opposition clause of the anti-retaliation provision, which protects employees who have opposed an employment practice that has been made unlawful by substantive anti-discrimination statute. See *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1175 (11th Cir.2000). Although the Plaintiff need not show that the conduct opposed was unlawful to show that she engaged in protected opposition to discrimination, she must show that she had a reasonable, good faith

---

**21.** Defendant argues in its motion for summary judgment that several retaliatory and/or discriminatory actions were taken more than 180 days before Plaintiff filed her EEOC charge and, therefore, are procedurally-barred. [Doc. 85](Def. Br. at 21–22). Because Plaintiff only asserts a retaliatory termination claim in her response [Doc. 108](Pl. Br. at 21–22), the Court need not address Defendant's procedural argument.

belief that the discrimination existed. *See Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1351 (11th Cir.1999); *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1388 (11th Cir.1998) (citing *Little v. United Tech.,* 103 F.3d 956, 960 (11th Cir. 1997)). The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against substantive law. *See Clover,* 176 F.3d at 1351; *Little,* 103 F.3d at 960(explaining that failure to charge an employee who opposes an employment practice with substantive knowledge of the law would eviscerate the objective component of the reasonableness inquiry). Protected activity is likewise defined in the EEOC compliance Manual as an activity which "opposed any practice made unlawful under the employment discrimination statutes." U.S. EEOC Compliance Manual, 591 PLI/Lit 729, 738 (1998). Some acts of opposition listed in the EEOC's Compliance Manual include filing an EEOC charge, threatening to file an EEOC charge, complaining to anyone about alleged discrimination, refusing to obey an order because of a reasonable belief that it is discriminatory, and requesting reasonable accommodation or religious accommodation 591 PLI/Lit 729, 738–39 (1998).

In this case, Defendants argue that "Plaintiff cannot show that she believed her complaints were statutorily protected because, as discussed above, she believed that Defendants' actions were in response to her on-the-job injury." [Doc. 110](Def. Reply. at 12–13). The Court's review of Plaintiff's testimony reveals that she subjectively believed that she was being retaliated against because Defendants did not want to report her on-the-job injury for purposes of Workers' Compensation. (Pl. Dep. at 197–198) ("[I]t wasn't until the accident when I feel like that the retaliation began, was the starting point, I think, of some of the things that were happening,

and that—that [Jon Been] didn't want to report it. And probably a lot of people don't want to report workers' comp, I hear all the time."). As a result, it is unequivocal that Plaintiff did not have a subjective, good faith belief that she was opposing age and disability discrimination because she believed her complaints were being met with retaliation in response to her injury. *Id.*

In addition, Plaintiff cannot show that it was objectively or subjectively reasonable that she believed she was opposing disability discrimination, because she was not disabled under the ADA, *see supra* at 30, and Plaintiff has a juris doctorate degree. *See* (Pl. Dep. at 22–23); *Harris v. Corrections Corp. of America,* 2005 WL 1400253, *159 (11th Cir.2005)(no statutorily protected activity where there is no evidence of discrimination)(unpublished opinion). *See also Clover,* 176 F.3d at 1351 (to determine whether belief was objectively reasonable, courts consider the existing substantive law). As a result, the Court finds no statutorily protected activity on which to base Plaintiff's retaliation claim. Accordingly, summary judgment should be **GRANTED** to Defendants on Plaintiff retaliation claims brought under the ADA and ADEA.

## V.

### Conclusion

For the reasons expressed herein, the undersigned **RECOMMENDS** that Plaintiff's motion for partial summary judgment as to her FLSA claim be **GRANTED.** [Doc. 77]. This Court **RECOMMENDS** that Plaintiff be awarded damages for unpaid overtime wages; that she be awarded liquidated damages; and that she be awarded her reasonable attorneys' fees and costs. The Court does not find, however, that Plaintiff is entitled to equitable relief; therefore, summary judgment

should be **DENIED** as to Plaintiff's claims for equitable relief in the form of reinstatement or injunction. As noted herein, this recommendation is for partial summary judgment as to liability; the amount of damages must be proven at trial.

Next, the Court **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's ADA claim, and her retaliation claims, brought under the ADA and ADEA, be **GRANTED.** [Doc. 85]. Defendants' motion for summary judgment, however, should be **DENIED** as to her ADEA claim and her FLSA claims. *Id.* In addition, "Plaintiff's objections and response to Defendants' objections to Plaintiff's statement of additional facts" [Doc. 114] and "Plaintiff's objections to Defendants' reply to Plaintiff's response to Defendants' statement of undisputed material facts" [Doc. 115] are **STRICKEN.** Finally, with respect to Defendants' res judicata defense, to the extent that this report and recommendation is adopted by the district judge and any of Plaintiff's claims are allowed to proceed past summary judgment, the undersigned **RECOMMENDS** that Defendants be given ten days from the adoption of the report and recommendation to file a motion for summary judgment, based on the doctrine of res judicata.

It is **SO REPORTED AND RECOMMENDED,** this 6th day of July, 2006.