Delbra L. DEAN, Plaintiff,

v.

1715 NORTHSIDE DRIVE, INC.,
et al., Defendants.

CIVIL ACTION NO. 1:14–CV–3775–CAP

United States District Court,
N.D. Georgia, Atlanta Division.

Signed 01/14/2016

Charles Ronald Bridgers, Kevin D. Fitzpatrick, Jr., Matthew Wilson Herrington, DeLong Caldwell Bridgers Fitzpatrick & Benjamin, LLC, Atlanta, GA, for Plaintiff.

DeWayne Nathaniel Martin, Martin Walker & Newby LLP, Kenneth A. Newby, Newby Law Group LLC, Herbert P. Schlanger, Office of Herbert P. Schlanger, Atlanta, GA, for Defendants.

### ORDER

CHARLES A. PANNELL, JR., United States District Judge

This matter is before the court on the parties' cross motions for partial summary judgment: that is, 1715 Northside Drive, Incorporated, A–1 Entertainment, and

Carmen Popovitch's (collectively, the "defendants") motion for summary judgment or alternatively motion for judgment on the pleadings [Doc. No. 77],[1] and the plaintiff's motion for partial summary judgment [Doc. No. 92]. Both sides have also filed motions for leave to file excess pages in their summary judgment briefs. As a preliminary matter, the motions for leave to file excess pages are GRANTED [Doc. Nos. 83, 96].

## I. Background [2]

The plaintiff in this case brings suit against the defendants for alleged violations of the minimum-wage provisions of the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201 *et seq.*). As originally pled, the plaintiff also named C.B. Jones, II, as a defendant in this case. While Jones remains a named defendant in this case, Jones has not joined the defendants' motion for summary judgment and has apparently settled the claims against him with the plaintiff.[3]

In addition to the employment-related claims, the plaintiff also claims that the defendants filed fraudulent tax returns by submitting returns classifying her as an "independent contractor" in violation of 26 U.S.C. § 7434. The defendants' answer to these employment-related claims includes counterclaims against the plaintiff for breach of contract, promissory estoppel, and unjust enrichment [Doc. No. 21].

The defendants are the owners and operators of Dreams (f/k/a Diamond Club) (hereinafter the "club"), an adult entertainment club in Atlanta, Georgia. From late 2010 (or early 2011) through August 2014, the plaintiff worked almost exclusively as an exotic dancer at the club. The club provided the plaintiff and other dancers with music, a stage, and other fixtures to facilitate their performances. The plaintiff was hired based on her appearance alone and was not required to possess any formal training or special dancing skills prior to dancing for the club.

Each shift, the plaintiff and other dancers would pay the club "stage rental fees." [4] These fees increased based upon the dancer's time of arrival and were compulsory. In return, the plaintiff and other dancers were compensated by customers based on the club's house set fee schedule: $100 for a fifteen-minute dance in the club's VIP rooms (or a maximum of $400 for an hour); $20 for a dance in one of the club's glass rooms; and $10 for a table dance lasting the duration of one song. The plaintiff was compensated in cash from club customers for all dances other than certain VIP-room dances where the customer paid by credit card (the customer could pay by cash or by credit card for VIP-room dances). The club did not track

1. The court will construe the defendants' motion as one for partial summary judgment. While the standard applied by the court is nearly identical under both a motion for summary judgment and a motion for judgment on the pleadings, the court will consider matters outside of the pleadings in ruling on the defendants' motion and thus should proceed under the Rule 56 framework.

2. The court will discuss additional facts relevant to each party's motion in the section of this order addressing that motion.

3. The court previously denied the plaintiff and Jones' joint motion for an order approving a settlement between these parties [Doc. No. 72]. The court decided to wait until all claims against all parties have been resolved before approving this or any other settlement in this case.

4. In addition, the plaintiff was supposed to pay the disc jockey 10% of monies earned (or at least $10) each shift. The plaintiff and other dancers also paid fees to the club's managers and security personnel.

or record any cash payments made to dancers by customers, nor did it track or record the hours worked by any particular dancer. In the event a customer paid by credit card for a VIP-room performance, the club passed along to the plaintiff the fees collected through the credit-card transaction minus a 10% merchant service fee (the credit-card fee was apparently 5% prior to December 2013).[5] The club did not pay the plaintiff any wages for her services as an exotic dancer at the club.

In December 2013, Jones sold 1715 Northside Drive to A–1 Entertainment in a transaction consummated by way of a stock purchase agreement [Doc. No. 77–4]. At all times relevant to this action, Popovitch was the sole member of A–1 Entertainment, and A–1 Entertainment was the sole shareholder of 1715 Northside Drive. After the sale, aside from a change in the club's trade name, the club remained essentially unchanged and continued to provide adult entertainment, food, and drinks to patrons.

## II. Discussion

### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure authorizes a court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element

of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247, 106 S.Ct. 2505. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita Industrial Co.*, 475 U.S. at 586, 106 S.Ct. 1348. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.*

### B. The Defendants' Motion for Partial Summary Judgment

The defendants have moved for summary judgment on five issues: (1) the

---

5. The club used a system of "IOU" slips and would later write the plaintiff a check.

scienter component of the plaintiff's claim under 26 U.S.C. § 7434 (tax fraud); (2) the successor liability of the defendants; (3) the defendants' good-faith defense; (4) the liability of defendant Popovitch individually; and (5) the defendants' counterclaim for breach of contract.[6] The court will address each issue in turn.

### 1. Tax Fraud (26 U.S.C. § 7434)

█ Count II of the plaintiff's complaint sets out a claim under 26 U.S.C. § 7434 for filing fraudulent tax information with the Internal Revenue Service. The plaintiff asserts that for each year she was employed at the club, the defendants filed Forms 1099–MISC with the Internal Revenue Service categorizing monies earned by her as "nonemployee compensation." [Doc. No. 1 at 14]. Characterizing herself as an "employee" rather than an "independent contractor," the plaintiff alleges that the defendants "intentionally, willfully, and fraudulently misclassified [her] as an independent contractor and filed fraudulent Forms 1099 with respect to [the plaintiff] for the [d]efendants' own enrichment." [Doc. No. 1 at 14].

█ Section 7434 provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). To establish a claim of tax fraud under 26 U.S.C. § 7434, a plaintiff must prove the following: (1) the defendants issued an information return; (2) the information return was fraudulent; and (3) the defendants willfully issued a fraudulent information return. *Leon v. Tapas & Tintos, Inc.*,

51 F.Supp.3d 1290, 1297 (S.D. Fla. 2014) (citation omitted). The defendants challenge the third element of the plaintiff's tax fraud claim, arguing that the plaintiff has failed to proffer any evidence showing that the defendants willfully defrauded the government. According to the defendants, the evidence on the record shows the opposite; the defendants point out that Jones, as the owner of 1715 Northside Drive prior to the sale in December 2013, received legal advice from Scott Schulten who advised that club dancers could be classified as independent contractors for tax purposes.

Courts in this circuit have interpreted the term "willfully" as requiring "proof of deceitfulness or bad faith in connection with filing an information return." *Seijo v. Casa Salsa, Inc.*, No. 12-60892-CIV, 2013 WL 6184969, at *7 (S.D. Fla. Nov. 25, 2013) (internal quotation marks omitted) (citation omitted); *Leon*, 51 F.Supp.3d at 1298 (stating that willfulness "connotes a voluntary, intentional violation of a legal duty, and that tax fraud typically requires intentional wrongdoing") (internal quotation marks omitted) (citations omitted). The plaintiff in the case at bar submits the following evidence to show that the defendants willfully issued a fraudulent information return: (1) evidence showing that Jones and 1715 Northside Drive received a letter in or around December 1993 from the U.S. Department of Labor's Wage and Hour Division ("WHD") in which the WHD classified the club's dancers as "employees" and not "independent contractors" [Doc. No. 92–4 at 15]; (2) an admission by the defendants that after purchasing the club in December

---

**6.** The defendants also purport to move for partial summary judgment on their unjust enrichment counterclaim. However, in the brief in support of their motion, the defendants fail to address this claim much less demonstrate

that there exists no dispute as to any material fact associated therewith. The court will therefore address this claim only in conjunction with the plaintiff's motion for partial summary judgment.

2013, they never sought legal advice as to their FLSA obligations to the plaintiff or other dancers—they instead apparently "informed themselves"; and (3) evidence indicating that the defendants issued Forms 1099 for Vickie L. Mayes, who testified that she "barely danced" and more commonly served in a waitress (or bartender) capacity, a position more commonly associated with employee status [7] [Doc. No. 97–3 at 4]. From this evidence, a reasonable factfinder could conclude that the defendants "willfully" issued fraudulent returns. *Seijo*, 2013 WL 6184969, at *7 (denying summary judgment on the same issue based on mere affidavit from which a jury could infer that defendant knew it was incorrectly classifying workers as independent contractors). Because a reasonable factfinder could conclude that all three elements of § 7434 are met with regard to all defendants, the court DENIES the defendants' summary judgment motion on this claim. *See id.*

### 2. Successor Liability of A–1 Entertainment and Popovitch

By looking to the federal common law standard of successor liability as applied by the court in *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013), the defendants maintain that the claims against them should be dismissed under the successor liability doctrine—or at least those claims seeking to impose liability for violations occurring before the sale of 1715 Northside Drive in December 2013. The plaintiff responds that her claims do not "rely on a theory of successor liability. Rather, [the] [p]laintiff

asserts that 1715 [Northside Drive] is liable for its own FLSA violations both before and after it was acquired by A–1 [Entertainment]." [Doc. No. 97 at 7]. In other words, the plaintiff argues that 1715 Northside Drive is liable for any FLSA violations regardless of whether they occurred pre- or post-sale. More importantly, though, the plaintiff claims that she does not rely on successor liability to impose pre-sale liability on A–1 Entertainment; the plaintiff states that "[s]ince A–1 [Entertainment] acquired [1715] Northside Drive, the two companies functioned as an "enterprise" under the FLSA. Because the plaintiff, by her own admission, does not seek to impose liability on any of the defendants through the application of the successor liability doctrine, the defendants' motion on this particular ground is DENIED AS MOOT.

### 3. The Defendants' Good–Faith Defense

The defendants request dismissal of the plaintiff's claim for liquidated damages [8] under the good-faith defense in 29 U.S.C. § 260 or, alternatively, dismissal of the plaintiff's FLSA claims altogether under 29 U.S.C. § 259. The defendants also move for the dismissal of the plaintiff's claims that extend past the FLSA's two-year statute of limitations period set out in 29 U.S.C. § 255.

#### (a) 29 U.S.C. § 259

Pursuant to 29 U.S.C. § 259(a), "no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the

---

**7.** To be clear, the court does not hold that Ms. Mayes was an "employee" under the FLSA. The point is that when viewing the evidence and all factual inferences taken therefrom in the light most favorable to the plaintiff, it may be reasonably inferred that Ms. Mayes was considered an employee by the club yet, at the same time, the club was issuing Forms 1099 classifying her as an independent contractor.

**8.** Among other remedies, the plaintiff is seeking liquidated damages under 29 U.S.C. § 216(b) for the alleged FLSA violations.

[FLSA], as amended [29 U.S.C.A. § 201 *et seq.*] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency. . . ." The employer must "plead and prove" that the "act or omission complained of was (1) taken in good faith and was (2) in conformity with [9] and (3) in [actual] reliance [10] on a written administrative interpretation by a designated agency." [11] *Cole v. Farm Fresh Poultry, Inc.,* 824 F.2d 923, 926 (11th Cir. 1987) (citations omitted). In passing this statute, "Congress intended to exonerate only those who relied upon **formal rulings.**" *Murphy v. Miller Brewing Co.,* 307 F.Supp. 829, 838 (E.D. Wis. 1969) (citation omitted) (emphasis added).

■ In this case, the defendants argue that they should be exonerated under 29 U.S.C. § 259(a) because they relied on a December 27, 1993, letter sent to Mr. Scott Lawson (the club's accountant at the time) from Ms. Mary Ziegler, an investigator with WHD [Doc. No. 77–9]. In this administrative letter, among other things, Ms. Ziegler proposes a method by which the club can satisfy the minimum-wage requirement using "house set table dance fees" [Doc. No. 77–9]. However, notwithstanding the fact that it is far from clear that the defendants actually relied on this letter, and even assuming the letter was made available to the defendants after the sale in December 2013, this document is not sufficient to establish a good-faith defense under 29 U.S.C. § 259. The United States District Court for the Middle District of Florida neatly addressed this issue by stating the following regarding 29 U.S.C. § 259:

> That section requires reliance upon a written administrative interpretation from the Administrator of the Wage and Hour Division of the Department of Labor, but Defendants' Exhibit B was sent by a Wage and Hour Investigator, not the Administrator. Further, this sort of correspondence does not constitute a written administrative interpretation. *See McLaughlin v. Quan,* 1988 WL 62595 at *3 (D. Colo. June 17, 1988) (written finding by Department of Labor investigator "would not constitute a ruling or interpretation of the Administrator such that any good faith reliance upon it would support a defense under 29 U.S.C. § 259"); *Murphy v. Miller Brewing Co.,* 307 F.Supp. 829, 838 (E.D. Wis. 1969) (summary of unpaid wages provided by investigator "was not an administrative regulation, order, ruling, approval or interpretation of the Administrator of the Wage and Hour Division of the Department of Labor as required by the statute.") . . . .

*Cusumano v. Maquipan Int'l, Inc.,* 390 F.Supp.2d 1216, 1222 (M.D. Fla. 2005). Here, as in *Cusumano,* because the defendants "have failed to point to a written administrative regulation, order, ruling, approval, or interpretation from the Ad-

---

**9.** "The 'good faith' defense is not available to an employer unless the acts or omissions complained of were 'in conformity with' the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy upon which he relied." 29 C.F.R. § 790.14.

**10.** "In addition to acting (or omitting to act) in good faith and in conformity with an administrative regulation, order, ruling, approv-

al, interpretation, enforcement policy or practice, the employer must also prove that he actually relied upon it." 29 C.F.R. § 790.16.

**11.** The agency designated to provide interpretations of the FLSA is the Administrator of the WHD. *Cole v. Farm Fresh Poultry, Inc.,* 824 F.2d 923, 926 (11th Cir. 1987) (citing, among other sources, 29 U.S.C. § 259(b)).

ministrator of the Wage and Hour Division of the Department of Labor to support their asserted good faith defense under 29 U.S.C. [§ ] 259," the defendants are not entitled to summary judgment on this issue. *Id.* (citing *Herman v. Suwannee Swifty Stores, Inc.*, 19 F.Supp.2d 1365, 1374 (M.D. Ga. 1998)). Rather, as the defendants have had the opportunity to demonstrate that the plaintiff, the non-movant, is not entitled to judgment as a matter of law on this affirmative defense, the court grants summary judgment in favor of the *plaintiff* on the good-faith defense provided in 29 U.S.C. § 259. Fed. R. Civ. P. 56(f)(1); *In re Cox*, 200 B.R. 706, 708 (Bankr. N.D. Ga. 1996) ("As long as the original movant had an opportunity to show that his opponent is not entitled to judgment as a matter of law, the court may grant summary judgment sua sponte.") (citations omitted).

### (b) 29 U.S.C. § 260

Pursuant to 29 U.S.C. § 260, "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [the penalties section of Title 29]." There are two preconditions to such an exercise of discretion by the court: "(1) The employers must show to the satisfaction of the court that the act or omission giving rise to such action was in good faith; and (2) that [they] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 C.F.R. § 790.22(b). "If these conditions are met by the employer against whom the suit is brought, the court is permitted, but not required, in its sound discretion to reduce or eliminate the liquidated damages which would otherwise be required in any judgment against the employer." *Id.* Lastly, "[w]hat constitutes good faith on the part of an employer and whether he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] are mixed questions of fact and law, which should be determined by objective tests." 29 C.F.R. § 790.22(c).

■■■ The defendants argue that because the club's fee schedule all but guaranteed wages well above minimum wage and because the plaintiff stated that if the court "were to find that her tips were in fact retained services charges, [the] [p]laintiff concedes that those amounts would be in excess of the federal minimum wage[,]" the court should award no liquidated damages. However, "good faith requires some duty to investigate potential liability under the FLSA." *Smith v. Wynfield Dev. Co.*, 451 F.Supp.2d 1327, 1337 (N.D. Ga. 2006) (citation omitted). After the sale of 1715 Northside Drive in December 2013, the defendants, by their own admission, "informed themselves" as to their obligations under the FLSA [Doc. No. 92–13 at ¶ 25]. This falls utterly short of an employer's duty to investigate liability under the FLSA. Moreover, "[a]n employer who knew or had reason to know that the FLSA applied cannot establish good faith as a defense. *Id.* (citing *Reeves v. International Tel. & Tel. Corp.*, 616 F.2d 1342, 1352–53 (5th Cir. 1980)). Here, before the sale in December 2013, the undisputed evidence shows that the WHD put Jones and 1715 Northside Drive on notice that its dancers were "employees" and not "independent contractors" and otherwise informed the club of its FLSA obligations. Furthermore, as noted in Part II.B.1 [Pgs. 6–9], the plaintiff has introduced sufficient evidence from which a reasonable jury could conclude that the

defendants "willfully" issued fraudulent returns both before and after the sale of 1715 Northside Drive. This holding, of course, directly militates against the defendants' subjective good faith. As such, the court will not grant summary judgment in favor of the defendants on the grounds that they have shown good faith such that an award of liquidated damages should be barred under 29 U.S.C. § 260.

#### (c) 29 U.S.C. § 255

██ Under 29 U.S.C. § 255(a), any action for unpaid minimum wages or liquidated damages under the FLSA "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued...." A willful FLSA violation occurs when the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

██ Here, despite 1715 Northside Drive and Jones' efforts in the early 1990s to ascertain their FLSA obligations, the plaintiff has presented evidence from which a reasonable jury could conclude that the defendants acted with actual knowledge that they were violating the FLSA by not paying the plaintiff minimum wages. *See supra* Part II.B.3.b [Pgs. 14–16]. For this reason, and because the question of willfulness under the FLSA is almost invariably a jury question, the court DENIES the defendants' motion for summary judgment on this ground, as well. *See Fuentes v. CAI Int'l, Inc.*, 728 F.Supp.2d 1347, 1360 (S.D. Fla. 2010) (holding that jury question remained as to "whether the defendants violated the FLSA and whether such violation was willful for purposes of determining whether the three year statute of limitations applie[d]").

#### 4. Claims Against Popovitch

██ The defendants next argue that the plaintiff's FLSA claims against Popovitch, the sole member of A–1 Entertainment and the director of 1715 Northside Drive, should be dismissed because Popovitch is not an "employer" under the FLSA.

██ Popovitch cannot be held individually liable for violating the FLSA unless she is an "employer." *Alvarez Perez v. Sanford–Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (citations omitted). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d). Whether an individual is an employer under the FLSA "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez*, 515 F.3d at 1160 (internal quotation marks omitted) (citation omitted). However, "in order to qualify as an employer ... an officer 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'" *Id.* (quoting *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986)). The defendants contend that since Popovitch did not exercise any significant control over the plaintiff (such control was apparently exercised by the club's manager, Mr. Harold Hunt), the court should dismiss plaintiff's claims against Popovitch. On the other hand, the plaintiff contends that the defendants' argument relates only to whether Popovitch exercised "significant control" over the plaintiff and not whether he was involved in the "day-to-day opera-

tions" of the club. And because the plaintiff has submitted evidence showing that Popovitch was involved in the day-to-day operations of the club, the plaintiff argues that the defendants have failed to meet their burden on summary judgment on this issue.

Here, the plaintiff has submitted evidence showing that Popovitch, as the sole member of A–1 Entertainment and the director of the club, controlled the terms of the plaintiff's employment, "purchased the [c]lub with money obtained by personal loans, [was] present in the club on a regular basis, handle[d] bookkeeping and purchasing, wrote checks to dancers, and on at least one occasion ha[d] instructed management to terminate a dancer." [Doc. No. 92–1 at 23].[12] As such, there is sufficient evidence from which a reasonable jury may conclude that Popovitch was either involved in the day-to-day operation of the club or was directly responsible for the supervision of the plaintiff during the relevant time period (or both). Of course, the defendants will have the opportunity to proffer their competing evidence (e.g., Mr. Hunt's role as the manager of the club) at trial. Therefore, the defendants' motion for summary judgment on the plaintiff's FLSA claims against Popovitch is DENIED.

### 5. The Defendants' Breach of Contract Counterclaim

■ In their answer, the defendants set out a counterclaim for breach of contract. They allege that "[b]y demanding compensation inconsistent with the independent contractor agreement"—an agreement allegedly entered into by the club and the plaintiff whereby the plaintiff agreed to be treated as an independent contractor—the plaintiff is liable for breach of contract [Doc. No. 21 at 16]. In their motion for partial summary judgment, the defendants claim that the FLSA does not prohibit agreements between an employer and an employee if the employee receives better rights under the agreement than those guaranteed by the FLSA. Because the subject agreement between the plaintiff and the club ostensibly provided for income in excess of that required by the federal minimum wage, the defendants argue that the agreement is valid and was breached by the plaintiff. On the other side, the plaintiff argues that FLSA rights cannot be waived or abridged by either the employer or the employee and thus the agreement between the club and the plaintiff is unenforceable.

"[A] party seeking summary judgment always bears the *initial responsibility* of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548 (emphasis added). Here, the defendants submit only a half-page argument in which they state that "VIP room fees alone exceeded [the] [d]efendants['] minimum wage obligations to [the] [p]laintiff" and that the "FLSA does not prohibit agreements between the employer and the employee if the employee receives better rights than the minimum guaranteed by the FLSA." [Doc. No. 77 at 23]. The defendants cite the plaintiff's interrogatory responses for the former statement, and they cite *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010) for the latter. For both assertions, though, the defendants grossly mischarac-

---

**12.** The direct citations to the evidence mentioned above are included in the plaintiff's brief [Doc. No. 92–1].

terize their cited sources. As for the statement that VIP-room fees alone exceeded the minimum wage, the plaintiff states in her interrogatory response that "were the Court to find that her tips were in fact retained service charges, [the] [p]laintiff conceded that those amounts would be excess of the federal minimum wage." [Doc. No. 77–2 at 8]. The court has not held (and below does not hold) that the monies received by the plaintiff were "service charges" and thus this statement does not show the absence of a genuine issue of material fact. As for the citation to *Cumbie*, the sole question in that case was whether a "restaurant violates the [FLSA], when, despite paying a cash wage greater than the minimum wage, it requires its wait staff to participate in a 'tip pool' that redistributes some of their tips to the kitchen staff." *Cumbie*, 596 F.3d at 578. As discussed in more detail below, *Cumbie* involved the validity of a tip-pooling arrangement and does not stand for the broad proposition relied upon by the defendants. Simply put, the defendants have failed to meet their initial burden for summary judgment on their breach of contract counterclaim, and, therefore, the motion must be DENIED.[13]

## C. The Plaintiff's Motion for Partial Summary Judgment

The plaintiff moves for partial summary judgment on ten separate issues: (1) whether the plaintiff was covered by the FLSA for the years 2010 through 2014; (2) whether A–1 Entertainment shares liability with 1715 Northside Drive "for all post-December 2013 FLSA violations because it forms a single enterprise with 1715 [Northside Drive] with a unified operation, common control, and a common business purpose"; (3) whether A–1 Entertain-

ment is "liable as a successor entity for all of 1715 [Northside Drive's] pre-December 2013 FLSA violations"; (4) whether the plaintiff was an "employee" under the FLSA at all relative times; (5) whether Popovitch was an "employer" under the FLSA at all relative times; (6) whether the plaintiff was exempt from the FLSA's minimum-wage provisions as a creative professional; (7) whether the defendants violated the FLSA's minimum-wage provisions by failing to pay the plaintiff any wages and by requiring the plaintiff to pay "kickbacks"; (8) whether the defendants are entitled to a set off; (9) whether the minimum-wage violations were "willful" as a matter of law; and (10) whether the plaintiff is entitled to partial summary judgment on the defendants' counterclaims. The court will address each issue in turn.

### 1. Enterprise Coverage

 The plaintiff first argues that she was a "covered" employee under the FLSA for the years 2010 through 2014 because she was employed by an "enterprise engaged in commerce." It is well settled that to fall under the protections of the FLSA, an employee must first demonstrate that she is "covered" by the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298–99 (11th Cir. 2011). The defendants do not dispute that the plaintiff was a covered employee for the two-year FLSA limitations period (including 2014); however, they claim that there are "questions of material fact as to A–1 [Entertainment's] coverage before 2014." [Doc. No. 99 at 5]. The defendants' response brief muddies the water by suggesting that the change in the club's ownership in December 2013 somehow affected the plaintiff's status as a covered employee under the FLSA. However, as discussed

---

**13.** Astonishingly, the defendants fail to point to any evidence memorializing or otherwise establishing the agreement purportedly breached by the plaintiff.

immediately below, the question of whether the plaintiff was a covered employee does not turn on whether a given entity was a "covered enterprise"; the relevant question is whether *the plaintiff* was covered under the FLSA during the time of her employment by the club.

Under the FLSA, the plaintiff may show "individual coverage" or "enterprise coverage." *Josendis*, 662 F.3d at 1298–99. Relevant here is the latter. "[A]n employee is subject to enterprise coverage if he is 'employed in an enterprise engaged in commerce or in the production of goods for commerce[.]' " *Id.* (citation omitted). An "enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.00] (exclusive of excise taxes at the retail level that are separately stated)[.]" 29 U.S.C. § 203(s)(1)(A)(i), (ii). Thus, the plaintiff in this case must show that, for the relevant time period, the club (1) had employees engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) had an annual gross volume of sales or business done of not less than $500,000.00.

Upon careful review, the court concludes that the plaintiff has shown that she was covered under the FLSA. First, between 2010 and 2014, the club provided adult entertainment, food, and alcoholic drinks that moved in interstate commerce [Doc. No. 99–13 at ¶ 17]. *Reich v. Priba*

*Corp.*, 890 F.Supp. 586, 590 (N.D. Tex. 1995) (holding that defendant-company constituted enterprise engaged in commerce "because they have employees handling, selling, or otherwise working on alcoholic beverages that have moved in interstate commerce....."). Second, between 2010 and 2014, the club had revenues in excess of $500,000.00 [Doc. No. 99–13 at ¶¶ 19–23]. In the plaintiff's statement of undisputed facts, the plaintiff states in Paragraphs 19 through 22 that the "[c]lub had gross revenues not less than $500,000[.00]" for the years 2010 through 2013, respectively [Doc. No. 92–2]. In response, for the years 2010 through 2013, the defendants do not expressly admit that the club had revenues of not less than $500,000.00. [Doc. No. 99–13 at ¶¶ 19–22]. But, in the same vein, they do not expressly deny that the club had revenues of not less than $500,000.00. For the revenues in 2010, for example, the defendants object to the admissibility of this factual assertion to the extent it is outside of the FLSA limitations period. This objection is OVERRULED, as the parameters of the applicable limitations period have not yet been defined. For 2011 through 2013, the defendants object on the grounds that the plaintiff's citations do not support the underlying factual assertions; the defendants again make the nonsensical argument that before the December 2013 sale, "only one entity could be called 'the Club.'" However, the evidence cited by the plaintiff *does* support the subject factual assertions, and the defendants' argument, as explained above, is nothing more than a red herring as the crux of the matter is whether the plaintiff was covered under the FLSA—not whether a particular entity was covered. These objections are thus OVERRULED. Because the defendants' objections to the factual assertions in Paragraphs 19 through 22 have no merit,

and because the defendants do not take issue with the actual amount of revenue received by the club for the years 2010 through 2013, the defendants are deemed to have admitted that the club had revenues of not less than $500,000.00 for these years. *See, e.g., De v. City of Chicago,* 912 F.Supp.2d 709, 714 (N.D. Ill. 2012) ("As a result, the City's facts to which the improper responses are directed are deemed admitted."). Thus, for the years 2010 through 2014, the plaintiff has sufficiently demonstrated that she was covered under the FLSA. The plaintiff's motion on this issue is GRANTED.

### 2. 1715 Northside Drive and A–1 Entertainment as a Single Enterprise

■■■ The next issue pertains to the FLSA liability of both 1715 Northside Drive and A–1 Entertainment and arises in large part as a result of Jones' sale of 1715 Northside Drive to A–1 Entertainment in December 2013.

The plaintiff argues that 1715 Northside Drive and A–1 Entertainment are a single "enterprise" and therefore "share liability for all FLSA violations after December 2013." [Doc. No. 92–1 at 11].[14] The plaintiff reasons that after A–1 Entertainment purchased 1715 Northside Drive in December 2013, the two entities formed a single enterprise with unified operation, common control, and a common business purpose. The defendants do not explicitly challenge the plaintiff's characterization of 1715 Northside Drive and A–1 Entertainment as a single enterprise after the sale in December 2013 [Doc. No. 99 at 6]. Because the defendants do not dispute the plaintiff's motion on this issue (either expressly

or by showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute), the court has no trouble concluding that A–1 Entertainment and 1715 Northside Drive were a single enterprise under the FLSA at all relevant times *after* December 2013.

The plaintiff, however, also contends that A–1 Entertainment is liable for 1715 Northside Drive's *pre*-December 2013 FLSA violations. Though ambiguously at best, the plaintiff appears to argue that because A–1 Entertainment purchased 1715 Northside Drive by way of a stock purchase agreement, A–1 Entertainment is liable for any of the club's pre-sale FLSA violations. But, as noted above in conjunction with the defendants' motion, the plaintiff asserts that she does not rely on successor liability to impose pre-sale FLSA liability on A–1 Entertainment. Instead, the plaintiff posits that A–1 Entertainment purchased 1715 Northside Drive through a stock purchase and thus 1715 Northside Drive remained an "ongoing corporate entity" and its "liability for previous FLSA violations did not change after its sale to A–1 [Entertainment]." [Doc. No. 92–1 at 11]. While the plaintiff is correct in stating that 1715 Northside Drive remains liable for its own pre-sale FLSA violations, the plaintiff has not shown the court how such liability was imputed to A–1 Entertainment after the sale. To impose FLSA successor liability on A–1 Entertainment, the plaintiff would need to show the application of federal successor liability, *Teed v. Thomas & Betts Power Sols., L.L.C.,* 711 F.3d 763 (7th Cir. 2013), or that A–1 Entertainment as the purchasing company is automatically (or perhaps implicitly) liable

---

14. The FLSA defines "enterprise" to mean the "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activi-

ties whether performed in one or more establishments or by one or more corporate or other organizational units...." 29 U.S.C. § 203(r)(1).

for the pre-sale FLSA liabilities of 1715 Northside Drive, the selling corporation, *Brown Transp. Corp. v. St.*, 194 Ga.App. 717, 391 S.E.2d 699, 702 (1990) (citing *Bullington v. Union Tool Corp.*, 254 Ga. 283, 328 S.E.2d 726 (1985)). The plaintiff has disavowed proceeding under the former theory and has failed to demonstrate the latter. Moreover, the plaintiff has not pointed to any authority holding that a constituent company of an FLSA "enterprise" can be held liable for violations of another company in the same enterprise that arose before the companies became an enterprise. Accordingly, the plaintiff's motion for partial summary judgment on this issue is DENIED.

### 3. Classification: Employee or Independent Contractor

The minimum-wage protections of the FLSA apply only to statutory "employees." 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To prove an FLSA violation, "[t]he elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees...." *Sec. of Labor v. Labbe*, 319 Fed.Appx. 761, 763 (11th Cir. 2008). "Independent contractors" are not "covered employees." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (holding that district court erred in granting summary judgment because genuine issues of material fact existed as to whether technicians were "employees"). An independent contractor differs from an employee in that an independent contractor is "in business for himself"; an employee is "dependent upon finding employment in the business of others." *Id.* at 1312.

To distinguish independent contractors from employees, courts look to the "economic reality" of their working relationship. *Scantland*, 721 F.3d at 1313. The inquiry is whether the alleged employee has "economic dependence" on his or her alleged employer. *Id.* at 1312. To guide this inquiry, the Eleventh Circuit provides six factors:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* (citations omitted). These six factors are not exclusive and no single factor is dominant. *Id.* ("We view the subsidiary facts relevant to each factor through the lens of 'economic dependence' and whether they are more analogous to the 'usual path' of an employee or an independent contractor."). Moreover, the parties' subjective beliefs and expectations, as well as the labels they place on their relationship, are immaterial. *See id.* ("This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling the relationship...."); *Chapman v. A.S.U.I. Healthcare and Development Center*, 562 Fed.Appx. 182, 184 (5th Cir. 2014) ("Neither a defendant's subjective belief about employment status nor the existence of a contract designating that status is dispositive."). The court will consider each of the factors of the economic realities test.

*(a) Control*

■■■■ To determine if an individual is an independent contractor or an employee, the court first considers "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed." *Scantland*, 721 F.3d at 1312. In moving for partial summary judgment, the plaintiff argues that the defendants exercised significant control by subjecting her to "stage rental fees," which increased over the course of the night. The club also apparently exercised control by setting the minimum amount the plaintiff could charge customers for dances at club tables and in the club's VIP room; Popovitch also supposedly set a cap on the amount the plaintiff and other dancers could charge for an hour-long dance in the VIP room. Lastly, the plaintiff submits that Popovitch has admitted that she terminated another dancer for, among other reasons, "not working enough shifts." [Doc. No. 92–1 at 16].

The defendants, on the other hand, claim that the club's fee structure did not penalize dancers for arriving late but merely took into account the fact that more clients arrived later in the evening. The defendants argue that the plaintiff was free to, and in fact did, work for other clubs; that she could request certain songs on stage and in the VIP rooms; that she could refuse to dance on stage; that she could opt to work the night shift or the day shift; that she could drink as much alcohol as she pleased; and that she could select for whom she would dance.

In this case, the "mere fact that [the club] has delegated a measure of discretion to its dancers does not necessarily mean that its dancers are elevated to the status of independent contractors." *Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343,

1349 (M.D. Fla. 1997). In fact, "one could say that the nature of a dancer's job requires some measure of discretion and flexibility." *Id.* The "real question is whether the dancer exerts control over a 'meaningful' part of the business[,]" and in this case (like *Harrell*) several facts indicate that the defendants exercised considerable control over the plaintiff. *Id.* For instance, the club set fees for table and VIP-room dances and required the plaintiff to pay 10% of her monies to the disc jockey. The club's manager also "told the dancers the days and times when they performed." [Doc. No. 77–14 at 8]. Further, the club required dancers to fill out an application through which the dancers apparently agreed to receive the house-set fees in return for their services.[15] Lastly, there is at least some evidence that Popovitch disciplined dancers for failing to comply with club rules. These facts "overshadow the smaller freedoms that [the club] allowed its dancers." *Harrell*, 992 F.Supp. at 1350. Based upon the totality of the record, the court concludes that the club exercised a significant amount of control over the plaintiff, and that this factor weighs in favor of finding an employer-employee relationship.

*(b) Opportunity for Profit or Loss*

■■■■ Similar to the arguments raised by the putative employer in *Clincy v. Galardi South Enterprises*, the defendants argue that the plaintiff's opportunity to profit is "largely a product of [her] own initiative, resulting from when and how often [she] choose[s] to work [and her] conduct at work[.]" *Clincy v. Galardi S. Enterprises, Inc.*, 808 F.Supp.2d 1326, 1345 (N.D. Ga. 2011). However, this court, like *Clincy*, is "not aware of any decision in which a court found that an exotic dancer

---

**15.** There is also evidence that a list of club rules was posted in the dancers' dressing room up until the club was acquired in December 2013.

has significant control over her opportunity for profit or loss relative to the club at which she works." *Id.* (noting also that several courts have rejected that notion). The defendants posit that the plaintiff was paid at a pre-determined rate, had no job benefits, and paid her own taxes [Doc. No. 99 at 12]. But, again, the defendants fail to show how these circumstances demonstrate the plaintiff's opportunity for profit or loss. Like above, this factor weighs in favor of finding an employer-employee relationship.

### (c) Investment in Materials Required for Task

The plaintiff estimates her monthly expenses for costumes, shoes, accessories, make-up, and hairstyling amounted to approximately $650.00 per month whereas the defendants claim to have paid roughly $215,000.00 in rent for each relevant month—A–1 Entertainment also points out that it paid over $1 million for 1715 Northside Drive in December 2013. The defendants argue that the plaintiff purchased "virtually all of the tools needed for the task of dancing" and that the plaintiff club's rental costs (and purchase price) are not necessary for the task of exotic dancing [Doc. No. 99 at 13–14]. Faced with nearly identical arguments, other courts in this Circuit that have addressed this question have "universally concluded that a dancer's investment is minor when compared to the club's investment." *Harrell*, 992 F.Supp. at 1350 (collecting cases). None of the facts presented to this court make this case an exception. As such, this factor militates against economic independence.

### (d) Special Skills

While the defendants do not dispute that dancers at the club were hired based on appearance alone and that there was no special dancing prerequisite to employment, the defendants argue that the plaintiff had to "dress appealingly" and must have had "people and negotiation skills" [Doc. No. 99 at 15]. The defendants also assert that the plaintiff was not dependent on the club for her physical attributes.

The defendants' hiring practice of employing dancers based on a "body check" alone and not requiring prior dancing experience is indistinguishable from the hiring practices of the club in *Clincy*. *See Clincy*, 808 F.Supp.2d at 1347–48. Several other courts have found that exotic dancing, under similar circumstances, does not require special skills. *See, e.g., Harrell*, 992 F.Supp. at 1350; *Morse v. Mer Corp.*, No. 1:08-CV-1389-WTL-JMS, 2010 WL 2346334, at *1 (S.D. Ind. June 4, 2010); *Reich*, 890 F.Supp. at 592. As nicely put by the court in *Reich*, the "scope of [the plaintiff's] initiative is restricted to decisions involving what clothes to wear and how provocatively to dance. Such limited initiative is more consistent with the status of an employee than an independent contractor." *Reich*, 890 F.Supp. at 593.

### (e) Degree of Permanency and Duration of Work Relationship

The defendants argue in connection with this factor that exotic dancing, by its very nature, is not a permanent profession and that the business of nude entertainment contains a high turnover of dancers and is "transient in nature." [Doc. No. 99 at 16]. The plaintiff points out that she worked at the club for approximately four years and "apart from a couple of shifts, [the] [p]laintiff did not work at any other clubs" during the relevant time period [Doc. No. 92–1 at 20]. Notwithstanding the court's recognition that this industry tends to be itinerant and transient in nature, *see, e.g., Harrell*, 992 F.Supp. 1343 at 1352, the

court places less emphasis on this factor because "[e]ven [though] the freedom to work for multiple employers may provide something of a safety net, unless a worker possesses specialized and widely-demanded skills, that freedom is hardly the same as true economic independence, *McLaughlin v. Seafood, Inc.*, 861 F.2d 450, 452–53 (5th Cir. 1988). Moreover, the duration of the plaintiff's employment at the club was significantly lengthier than the employment span of exotic dancers in cases raised by the defendants. And this inquiry, of course, is focused on the plaintiff herself.

### (f) Integral Part

■■■■■■ "The extent to which the task performed by the alleged employee was integral to the business of the employer is a factor indicating dependence." *Harrell*, 992 F.Supp. 1343 at 1352. The defendants do not dispute that nude dancing is part of their business. Nor should they. *See Harrell*, 992 F.Supp. at 1352 ("Exotic dancers are obviously essential to the success of a topless nightclub."). However, the defendants do contend that nude dancing played no part in A–1 Entertainment's business prior to its purchase of 1715 Northside Drive in December 2013. Although the court will incorporate this subtle distinction into the economic-dependence calculus, the court must recognize that the plaintiff served an integral role as an exotic dancer in an exotic dancing establishment, which is highly indicative of her economic dependence.

■ In summary, the question of whether a putative employee falls within the scope of the FLSA, "while based on the underlying facts, is ultimately a legal question." *Rossi v. Associated Limousine Servs., Inc.*, 438 F.Supp.2d 1354, 1359 (S.D. Fla. 2006) (citation omitted); *Perdomo v. Ask 4 Realty & Mgmt., Inc.*, 298 Fed.Appx. 820, 821 (11th Cir. 2008) (affirming district court's grant of summary judgment on employment status and stating that such a determination under the FLSA is a question of law subject to de novo review). Considering the totality of the record, the court holds that the undisputed factual evidence weighs so heavily in favor of economic dependence that no reasonable jury could conclude that the plaintiff was an independent contractor.[16] Put otherwise, as a matter of economic reality, the undisputed factual record shows that the plaintiff was dependent upon finding employment in the business of another. Thus, for all pertinent times, the court concludes that the plaintiff was an "employee" under the FLSA. The plaintiff's motion for partial summary judgment on this issue is GRANTED.

### 4. Classification: Popovitch as an Employer

Like the defendants, the plaintiff also seeks a determination of whether Popovitch was an "employer" under the FLSA. As the sole member of A–1 Entertainment (which is the sole owner of 1715 Northside Drive) and the director of 1715 Northside

---

**16.** The defendants also ask the court to consider that the plaintiff offered her services to the public and to take note of the parties' intent. As for the first contention, while the plaintiff performed for customers who are members of the public, these persons were customers of the club and not procured through the plaintiff's own independent initiative. As for the second contention, the defendants argue that the plaintiff agreed in substance to be treated as an independent contractor. This argument is without merit as the work performed by the plaintiff, as shown by the undisputed evidence on the record, follows the usual path of an employee. The fact that the plaintiff may have agreed to be paid or treated a certain way is not dispositive and does not change the conclusions reached herein.

Drive, the plaintiff contends that Popovitch was intimately involved in the day-to-day operations of the club. *See also Alvarez Perez*, 515 F.3d at 1160 ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.") (internal quotation marks omitted) (citation omitted). Above, in connection with the defendants' motion, the court held that there is sufficient evidence from which a reasonable jury may conclude that Popovitch was either involved in the day-to-day operation of the club or was directly responsible for the supervision of the plaintiff and other dancers during the relevant years (or both). *See supra* Part II.B.4 [Pgs. 17–19]. The parties have created a battle of facts with regard to whether Popovitch was an "employer" during the relevant time period, and, as such, summary judgment in favor of either party is inappropriate.

### 5. Creative Professional Exemption

The plaintiff next moves for partial summary judgment on one of the defendants' affirmative defenses, the "creative professional exemption." The FLSA states that the minimum wage provisions contained therein "shall not apply with respect to . . . any employee employed in a bona fide . . . professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary[.]" 29 U.S.C. § 213(a)(1). The Code of Federal Regulations defines "employee employed in a bona fide professional capacity" as any employee "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . . and "[w]hose primary duty is the performance of work . . . [r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29

C.F.R. § 541.300(a)(1), (2). It is well established that courts should "closely circumscribe" exceptions to the FLSA. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008) (citation omitted).

The plaintiff argues that the following facts are undisputed:

(1) the Club hired dancers on the basis of appearance alone and did not require dancers to actually dance before being hired; (2) the Club hired dancers with no previous dancing experience; (3) Plaintiff's only education is high school and a non-degree medical assisting program; (4) the Club permitted a waitress to dance in VIP rooms on occasion as long as she paid the applicable fees; (5) Plaintiff could request specific songs from the DJ while on stage, but when in VIP rooms she danced to "whatever played."

[Doc. No. 92–1 at 25]. According to the plaintiff, these undisputed facts show that the plaintiff's job as an exotic dancer did not require "invention, imagination, originality or talent—anybody could do it, as long as they paid the fees and were sufficiently attractive." [Doc. No. 92–1 at 26]. On the other hand, the defendants argue that the primary inquiry is whether the plaintiff "required special skill to perform for the club's patrons with their particular requirements." [Doc. No. 99 at 23]. Relatedly, the defendants assert that the plaintiff specialized in specific types of music, as is evidenced by her decision to switch from night shifts to day shifts when the music changed from rock to rap, respectively. Importantly, though, the defendants do not dispute the factual allegations listed above [Doc. No. 99–13].

Here, based on the undisputed facts, the plaintiff's primary duties did not require sufficient creativity. "To qualify for the creative professional exemption, an employee's primary duty must be the per-

formance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor as opposed to routine mental, manual, mechanical or physical work" and the "exemption does not apply to work which can be produced by a person with general manual or intellectual ability and training." 29 C.F.R. § 541.302(a). "The requirement of 'invention, imagination, originality or talent' distinguishes the creative professions from work that primarily depends on intelligence, diligence and accuracy." 29 C.F.R. § 541.302(c). The undisputed facts in this case show that the club hired dancers with no dancing experience and that the club did not require or encourage any particular dance steps. Moreover, the club did not require dancer candidates to actually dance before being hired. As noted by the court in *Henderson*, "aesthetic appeal [was] the only requirement." *Henderson v. 1400 Northside Drive, Inc.*, 110 F.Supp.3d 1318, 1322 (N.D. Ga. 2015). Based on this and other undisputed evidence on the record, the plaintiff is correct when she states that creativity is not a requirement of the plaintiff's job, and that the job may be performed by anybody with general ability and training. *See id.*; *see also Harrell*, 992 F.Supp. at 1351 (holding that exotic dancer did not satisfy creative professional exemption under similar circumstances). The plaintiff is therefore entitled to a judgment as a matter of law on the defendants' creative professional exemption defense.

### 6. Minimum Wage, Set Off, and Kickbacks

#### (a) Minimum Wage and Set Off

■ The plaintiff next asserts that the defendants violated the FLSA's minimum-wage provisions by failing to pay the plaintiff any wages and by requiring the plaintiff to pay unlawful "kickbacks." The plain-

tiff also contends that the defendants are not entitled to "set off" any portion of their FLSA minimum-wage liabilities.

Among other things, the FLSA requires that employers pay employees a minimum wage. 29 U.S.C. § 206(a). The defendants have admitted that the plaintiff was compensated solely "by way of tips from customers and VIP room fees." [Doc. No. 92–12 at 7]. Nevertheless, the defendants contend that they directly paid the plaintiff fees for VIP-room dances, which were usually collected from the customer by way of a credit-card transaction and then paid to the dancer (minus a 10% merchant fee). Based on the plaintiff's supposed admission that these VIP earnings were in excess of the federal minimum wage, the defendants argue that they satisfied their FLSA obligations (or, alternatively, that there is at least a question of material fact as to whether they have discharged their obligations under 29 C.F.R. § 531.55).

■ Under the FLSA, "service charges"—but not "tips"—may be used to satisfy an employer's monetary requirements under the FLSA. *See* 29 C.F.R. § 531.55; *see also Henderson*, 110 F.Supp.3d at 1322. A "tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service." 29 C.F.R. § 531.52. For a fee to be a "service charge," it "must be (1) recorded in a company's gross receipts, and (2) distributed by the company to the employee." *Henderson*, 110 F.Supp.3d at 1322 (citation omitted).

Here, the club did not keep track of amounts paid to the plaintiff for glass-room dances, table dances, stage dances, and floor dances.[17] The plaintiff and other dancers were compensated in cash for

---

**17.** The club also did not account for VIP- room dances when the customer paid in cash.

these efforts, and the club did not record these earnings in its gross receipts. Thus, monies collected for these dances were "tips" and cannot be applied to satisfy the defendants' FLSA obligations. As for entertainment provided in the VIP rooms, club customers could either pay in cash or by credit card for services rendered therein, and the plaintiff acknowledges that the club kept at least some records of credit-card payments made to dancers for performances in the VIP rooms. However, as the court stated in *Henderson*, "that a club does not treat *all* of the tips received as gross receipts of the company is fatal to the club's argument that the payments are service charges. Indeed, it would make little sense to classify otherwise similar payments differently simply because they occurred through different mediums." *Henderson*, 110 F.Supp.3d at 1323 (quoting *Reich*, 890 F.Supp. at 595) (internal quotation marks omitted). The defendant-club in *Henderson*, 1400 Northside Drive, presented the same argument as its successor club, 1715 Northside Drive, makes in the instant case. For the same reasons explained in that case, this court concludes that the fees paid by the club to the plaintiff for VIP-room dances were not "service charges" and cannot be used to set off the defendants' minimum-wage responsibilities. This being the case, the club's contention that its redistribution of VIP-room tips to the plaintiff for sums earned in the VIP rooms amounted to the payment of wages under the FLSA is without merit. Because the club did not pay the plaintiff (a covered employee) any wages under the FLSA, the defendants violated the FLSA's minimum-wage provisions (29 U.S.C. § 206(a)). Accordingly, the plaintiff is entitled to the full minimum wage for each hour worked during the applicable limitations period, and the plaintiff's motion for partial summary judgment on this issue is GRANTED.

### (b) Illegal Kickbacks

■ As noted above, the FLSA's definition of "wages" recognizes that if certain conditions are met, employers of "tipped employees"[18] may include part of the employee's tips as wage payments. 29 U.S.C. § 203(m). However, the employer may not take advantage of this tip credit unless "such employee has been informed by the employer of the provisions of § 203(m), and all tips received by such employee have been retained by the employee, except that § 203(m) shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.* Moreover, the corresponding federal regulations state that " 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. The club may however deduct a reasonable merchant service fee for processing employee tips, but the employer bears the burden of demonstrating that the withholdings were reasonable. *Reich*, 890 F.Supp. at 596 (citing *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 473 (11th Cir. 1982)). By requiring the plaintiff to remit one-tenth of her credit-card tips to the club for services rendered in the VIP rooms, the plaintiff submits that the defendants violated the FLSA in this fashion, as well. On the other side, the defendants retort that the plaintiff's VIP earnings exceeded the federal minimum wage and that there is a question of material

---

18. The plaintiff was a "tipped employee." *See* 29 U.S.C. § 203(t).

fact as to whether the plaintiff actually paid the 10% merchant service fee.[19]

Here, the defendants again rely heavily on *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577 (9th Cir. 2010). As discussed above, the issue in *Cumbie* was whether a restaurant violates the FLSA when, "despite paying a cash wage greater than the minimum wage, it requires its wait staff [which included the plaintiff in that case] to participate in a 'tip pool' that redistributes some of their tips to the kitchen staff." *Cumbie*, 596 F.3d at 578. The *Cumbie* court answered in the negative and held that the subject restaurant's tip-pooling arrangement did not *per se* violate the FLSA. In *Cumbie*, the plaintiff-waitress was paid a cash wage that was $2.10 more than the federal minimum wage. Moreover, the restaurant required its staff to contribute their tips to a tip pool that was redistributed to all kitchen staff, many of whom were not customarily tipped in the restaurant industry. The remaining tips after the redistribution (which was usually between 30% and 45%) were returned to the staff on top of their fixed cash wages. Under these facts, the *Cumbie* court held that the tip-pooling arrangement was not in contravention to 29 C.F.R. § 531.35. The court reasoned that "only the tips redistributed to Cumbie from the pool ever belonged to her, and her contributions to the pool did not, and could not, reduce her wages below the statutory minimum." *Cumbie*, 596 F.3d at 582. Explaining this holding, the *Cumbie* court further stated that "Cumbie received a wage that was far greater than the federally prescribed minimum, plus a substantial portion of her tips. Naturally,

she would prefer to receive *all* of her tips, but the FLSA does not create such an entitlement where no tip credit is taken." *Cumbie*, 596 F.3d at 583–84. It is the aforesaid language upon which the defendants' reliance rests.

The facts of this case are much different than *Cumbie*. Here, the club did not pay the plaintiff a cash wage (much less one that was greater than the federal minimum wage) and did not create a tip pool that distributed monies to other club employees before redistributing any remaining sums back to the dancers. Unlike *Cumbie*, the club here simply passed on monies earned by the plaintiff for certain VIP-room dances; the defendants essentially served as a financial conduit for the plaintiff's VIP-room earnings when the customer paid by credit card. But in any case, the defendants cannot claim a tip credit under 29 U.S.C. § 203(m) because they have shown neither that they informed the plaintiff of the provisions of § 203(m) nor that the club had a tipping pool among its employees who "customarily and regularly receive tips." *See* 29 U.S.C. § 203(m)(1), (2).

In addition, the defendants have failed to show that the credit-card processing fee was reasonable. Popovitch, in the capacity of 1715 Northside Drive's Rule 30(b)(6) witness, testified that she charged the subject credit-card fee because she "want[ed] to" and that she did not know how much the club was actually charged by its merchant service providers [Doc. No. 92–8 at 26–27].[20] Like in *Reich*, the club here "presented no documentation or records to

---

**19.** In this portion of the defendants' response brief (as well as other sections), the defendants respond to the plaintiff's motion and further claim that they are entitled to partial summary judgment. It is procedurally improper to move for summary judgment in a response brief, and the court will not address

those requests (though many are resolved by the court's resolution of the plaintiff's motion).

**20.** Before the sale in December 2013, the club has no records of the merchant service fees it paid.

support its contention that a percentage of the withholding covered the reasonable costs of credit card processing." *Reich,* 890 F.Supp. at 596. And, the FLSA does not allow an employer "to transfer to its employees the responsibility for the expenses of carrying on an enterprise." *Id.* (citing 29 C.F.R. § 531.3(d)(2), 531.32(c)).

Therefore, in sum, the defendants (1) have not satisfied 29 U.S.C. § 203(m) to receive a tip credit for sums paid to the plaintiff from credit-card transactions in the VIP rooms; (2) have not met their burden of showing that their merchant service fee was reasonable (as they must in defense of the plaintiff's motion for partial summary judgment on this issue); and (3) have not convinced this court that *Cumbie* mandates a ruling in their favor. Thus, in addition to the court's holdings above, the club must return all withheld merchant service fees to the plaintiff. *See Reich,* 890 F.Supp. at 595 ("[T]he club must return all tip out fees collected from the entertainers.").[21] The plaintiff's motion for partial summary judgment on this issue is GRANTED.

### 7. Whether the FLSA Violations Were "Willful"

Like the defendants, the plaintiff moves for partial summary judgment on the issue of whether the defendants' FLSA violations were "willful" for the purposes of 29 U.S.C. § 260 (liquidated damages) and 29 U.S.C. § 255 (limitations period).

As for 29 U.S.C. § 260, the court held above that the defendants failed to carry their burden of showing good faith. *See supra* Part II.B.3.b [Pgs. 14–16]. This holds true for the time period before the sale of 1715 Northside Drive in December 2013, as well as for the period thereafter.

For the reasons discussed above, the court holds again that the defendants have failed to demonstrate that its FLSA violations were committed in good faith. As such, the plaintiff is entitled to liquidated damages pursuant 29 U.S.C. § 260, and the plaintiff's motion for partial summary judgment on this point is GRANTED.

As for 29 U.S.C. § 255, the court held above in conjunction with the defendants' motion that there is conflicting evidence from which a reasonable jury could conclude that the defendants acted with actual knowledge that they were violating the FLSA by not paying the plaintiff minimum wages. *See supra* Part II.B.3.c [Pgs. 16–17]. For this reason, and because the question of willfulness under the FLSA is almost always a jury question (unlike 29 U.S.C. § 260), the court denied the defendants' motion for partial summary judgment on this issue. On those same grounds, the court must DENY partial summary judgment in favor of the plaintiff.

### 8. Counterclaims

Lastly, the plaintiff requests partial summary judgment on the defendants' counterclaims for breach of contract, unjust enrichment, and promissory estoppel. As an initial matter, the defendants did not respond to the plaintiff's motion vis-à-vis their promissory estoppel counterclaim [Doc. No. 99 at 34–37]; therefore, the plaintiff's motion for partial summary judgment on this claim is GRANTED. *See generally Matsushita Electrical Industrial Co.,* 475 U.S. at 586, 106 S.Ct. 1348.

#### (a) Breach of Contract Counterclaim

The plaintiff argues that this counterclaim fails because the agreement whereby the plaintiff supposedly agreed to work as

---

**21.** The defendants seem to miss the point: even assuming a tipped employee receives tips that amount to more than the federal minimum wage, an employer must still comply with the FLSA and is not discharged of any liability by that fact alone.

an independent contractor is unenforceable. On the other hand, again citing *Cumbie*, the defendants argue that the underlying agreement placed the plaintiff in a better position than the minimum guaranteed by the FLSA and is thus enforceable.

 "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and the legislative policies it was designed to effectuate." *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 432 (11th Cir. 1994) (citations omitted). While allowing a putative employer to bring a counterclaim against an employee, by itself, does not abridge the employee's rights under the FLSA, a putative employer may not bring a counterclaim based on the alleged breach of an agreement containing illegal compensation arrangements under the FLSA. *See Thompson v. 1715 Northside Drive*, No. 1:14–CV–390–RWS, at *11 (N.D. Ga. Mar. 30, 2015) ("As such, if the Court classifies Plaintiffs as employees, the Independent Contractor Agreements are void because terms of the Agreements contain illegal compensation arrangements under the FLSA."). Here, the agreement between the plaintiff and the club (which was presumably oral) apparently contained the plaintiff's assent to be treated as an independent contractor. Even if *Cumbie* stood for the broad proposition advanced by the defendants—which it does not—the underlying arrangement did not provide the plaintiff with benefits in excess of those guaranteed under the FLSA. As discussed above, the FLSA guaranteed the plaintiff (a covered employee) payment of the federal minimum wage in addition to her tips. In fact, the putative agreement between the club and the plaintiff placed the plaintiff in a worse position, as she received no wage payments and because it allowed the club to retain a certain percentage of her tips from the plaintiff's VIP-room performances. At a minimum, the putative agreement abridged the plaintiff's FLSA rights by precluding her from receiving wage payments from the club, which, of course, nullifies the FLSA's purpose of ensuring that employees are protected from substandard *wages*. *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (stating the purposes of FLSA). Having determined that the defendants violated the FLSA's minimum-wage provisions and that the plaintiff was an employee under the FLSA, the defendants' breach of contract counterclaim for "demanding compensation inconsistent with the independent contractor agreement" fails as a matter of law. The plaintiff is entitled to partial summary judgment on this claim.[22]

### (b) Unjust Enrichment Counterclaim

 Through this counterclaim, the defendants argue that "to the extent Plaintiff is found to have been entitled to minimum wages under the FLSA, Plaintiff would be unjustly enriched in keeping the service charges and the minimum wages." [Doc. No. 21 at ¶ 18]. The plaintiff argues that this counterclaim fails because the record unequivocally shows that the plaintiff retained only tips (i.e., not service charges) given to her by club customers with the club's knowledge.

 "The elements of unjust enrichment are [the following]: (1) the [defendant] has conferred a benefit on the [plaintiff]; (2) the [plaintiff] has knowledge of the benefit; (3) the [plaintiff] has accepted

---

**22.** In light of this holding, the court does not reach the plaintiff's argument regarding Po- povitch's standing.

or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the [plaintiff] to retain the benefit without paying for it. *Jenkins v. BAC Home Loan Servicing, LP*, 822 F.Supp.2d 1369, 1377 (M.D. Ga. 2011) (citing *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011)). In the case at bar, the undisputed facts show that the club simply passed along tips (not service charges) earned by the plaintiff for VIP-room performances where the customer paid by credit card (minus the merchant fee). It is certainly not inequitable for the plaintiff to retain these sums, as those tips rightfully belonged to her in the first place. As such, the defendants do not have an unjust enrichment claim, and the plaintiff's motion for partial summary judgment on this issue must be GRANTED.

### III. Conclusion

In summary, the court reaches the following conclusions:

A. **The Defendants' Motion for Summary Judgment or alternatively for a judgment on the pleadings is DENIED in its entirety [Doc. No. 77].**

 1. The court sua sponte GRANTS summary judgment in favor of the plaintiff on the defendants' good-faith defense under 29 U.S.C. § 259.

B. **The Plaintiff's Motion is GRANTED in part, DENIED in part [Doc. No. 92] as follows:**

 1. The court GRANTS the motion insofar as it seeks to classify the plaintiff as a covered FLSA employee for the years 2010 through 2014;

 2. The court GRANTS the motion on the issue of A–1 Entertainment and 1715 Northside Drive's shared FLSA liability as a single enterprise after the sale in December 2013 and DENIES the motion at is relates to A–1 Entertainment's pre-December 2013 FLSA liability; [23]

 3. The court GRANTS the motion insofar as it seeks to classify the plaintiff as an "employee" under the FLSA;

 4. The court DENIES the motion insofar as it seeks to classify Popovitch as an "employer" under the FLSA;

 5. The court GRANTS the motion as it relates to the creative professional exemption;

 6. The court GRANTS the motion to the extent it seeks to establish that the defendants violated the FLSA by failing to pay the plaintiff minimum wages and by requiring the plaintiff to pay improper "kickbacks";

 7. The court GRANTS the motion insofar as it seeks to preclude the defendants from applying a set off to their minimum wage obligations;

 8. The court GRANTS the motion as it relates to the defendants' good-faith defense under 29 U.S.C. § 260 and DENIES the motion as relates to 29 U.S.C. § 255; and

 9. The court GRANTS the motion as it pertains to the defendants' counterclaims of breach of con-

23. Because neither party expressly states that companies in a single enterprise share FLSA liability, the court—without so holding— makes this assumption for the purposes of this order.

tract, unjust enrichment, and promissory estoppel.

The parties shall submit a consolidated pretrial order within thirty days of the date on which this order is entered on the docket. *See* L.R. 16.4 (N.D. Ga.).

**SO ORDERED** this 14th day of January, 2016.